## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

PHILLIP PETRONE, *et al.*

        Plaintiffs,

        v.

WERNER ENTERPRISES, INC., *et al.*

        Defendants.

CIVIL ACTION NO: 8:11-cv-401
CIVIL ACTION NO: 8:12-cv-307

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE**

### INTRODUCTION

On August 3, 2015, this Court held that under Nebraska law, an employee is entitled to minimum wage for each hour worked. Two days later, Plaintiffs submitted an adjusted damages spreadsheet to Defendants which simply relies upon the Court's determination for how damages may be calculated and demonstrates the amount of damages owed per class member.

The adjusted spreadsheet is identical in all respects to the damages spreadsheet that was disclosed to Defendants with Plaintiffs' expert report on August 1, 2014, except that it adds summations that demonstrate the amount of damages calculated on an hour-by-hour basis. As outlined below, these summations did not require any data analysis or compilation of Defendants' voluminous driver records. Rather, they simply required multiplying the previously disclosed total amount of unpaid hours worked by the applicable minimum wage. Moreover, these summations were already computed and disclosed to Defendants in that Plaintiffs provided all of Kroon's computer code in August of 2014, the computer code calculated the hourly damage calculations, *and Kroon explicitly informed Defendants that his code performed such calculations in his August 2014 report* (indeed, Topel even attacked Kroon for doing same, claiming incorrectly that such a calculation would "drastically overstate damages").

1

Defendants have moved to prevent Plaintiffs from using this adjusted damages spreadsheet at trial, claiming that the calculations therein constitute a new expert opinion that was not disclosed prior to the expert deadline. Defendants also argue that the spreadsheet shows damages calculations that had not been disclosed as required by Rule 26's initial disclosure requirements. As explained fully below, Defendants' factual premise is incorrect, and their motion should be denied.

First, as this Court is well aware, Kroon's expertise, as a data analyst, was not to opine on the legal amount of damages owed to Plaintiffs. Rather, Kroon developed technical software to compute the amount of hours worked each workweek and the amount a driver was paid each workweek based upon Defendants' 20,000,000+ records produced in this case. Then, because determining wage and hour damages on a weekly basis required Kroon to compare the payroll documents against the driver log documents, Kroon developed a program that applied the *Klinghoffer* rule to determine damages.  But Kroon made explicitly clear that he did not have an opinion as to whether *Klinghoffer* should apply at all, and stated in his deposition that the formulas to be utilized to calculate damages would ultimately need to be decided by the Court, and that if the Court decided that damages should be calculated on an hour-by-hour basis, those calculations were an inherent part of his *Klinghoffer* calculation and he would provide the amount of damages for each class member on an hour-by-hour basis.

Moreover, in his August 2014 report, Kroon explained how hourly damage calculations are compiled, and further explained that his computer code already performed such calculations as such computations were inherent in calculating the more complicated weekly damage calculations.  Moreover, Kroon provided a spreadsheet which provided the exact number of unpaid hours each class member worked in each of the two categories of time (short rest breaks

and excessive sleeper berth) that the Court has held is compensable as a matter of law. Because damages based on an hourly analysis only require the multiplication of the unpaid number of hours worked (that Kroon had already provided in his August 2014 spreadsheet) by the applicable minimum wage (which, while not disputed, is also provided in Kroon's August 2014 report), the calculation of hour-by-hour damages was disclosed by Kroon as a matter of simple arithmetic.

Kroon has now done that arithmetic and Plaintiffs intend to call Kroon to provide summation and calculation evidence pursuant to Fed. R. Evid. 1006 that explains the arithmetic necessary to arrive at an hour-by-hour damages figure for each class member. Such testimony is not expert testimony, and did not need to be disclosed as part of Plaintiff's expert report, but, importantly, even if it was expert testimony, Kroon would be allowed to testify to it because his method of computing hour-by-hour damages was disclosed in his August 2014 expert report, the material figures that Kroon will use to testify as to the amount of hour-by-hour damages were disclosed for every single class member in a spreadsheet attached to Kroon's August 2014 expert report, and Defendants were on notice that Plaintiffs were seeking damages on an hour-by-hour basis and had (and took) the opportunity to depose Kroon about his methodologies and calculations that were relevant to the hourly damages calculation.

Defendants nevertheless attempt to argue that Plaintiffs' disclosure of an updated damages spreadsheet two days after the Court's summary judgment that adjusts their damages to conform to that ruling has caused such undue surprise and prejudice that the appropriate remedy would be to **bar** the Plaintiffs from presenting any evidence that would allow them to prove their damages on an hour-by-hour basis. In other words, having lost summary judgment, Defendants now attempt to snatch victory from the jaws of defeat by claiming that they cannot possibly

review Plaintiffs' hour-by-hour calculations in the month they have to prepare for trial, even though the Court's Order granting Plaintiffs' summary judgment as to liability freed Defendants from having to disprove liability at trial.

Preferring theatrics over analysis, Defendants have printed out 14,000 pages of Plaintiffs' adjusted damages spreadsheet and delivered them to the Court in paper format, despite the fact that Defendants had previously submitted voluminous records electronically. Defendants, however, provide no analysis to the Court relating to what new material is contained in those documents, and by providing same in paper, rather than in machine-searchable and manipulable format (*i.e.* the format in which Plaintiffs provided the calculations to Defendants), have attempted to gloss over their lack of analysis through an attack which has only surface appeal. This is because the "new" spreadsheet does not contain any new information, save for a single multiplication that multiplies the already disclosed number of unpaid hours by the already disclosed (and not disputed) applicable minimum wage.

Defendants' real argument is not based on a material change in Plaintiffs' disclosures, but instead is a backdoor attempt to reargue what they lost in summary judgment; *i.e.* that Plaintiffs should not be permitted to compute damages on an hourly basis. Because the Court has already held that Plaintiffs are entitled to calculate and recover damages on an hourly basis under Nebraska law, the Court should deny Defendants' motion.

## LEGAL ANALYSIS

### A.  LEGAL STANDARDS

Under Fed. R. Civ. P. 26(a)(2)(b), experts must be disclosed prior to trial and the expert must also disclose a report that lists the opinions the expert witness may express, the basis and reasons for them, and the facts and data the witness considering in forming the opinions.

However, at trial, an expert may provide additional testimony without filing a supplemental expert report as long as that testimony consists only of logical inferences from the opinions that were disclosed as part of the expert's pretrial disclosure. *See Thudium v. Allied Prods. Corp*., 36 F.3d 767, 770 (8th Cir. Mo. 1994).

Moreover, expert testimony is not needed, and an expert report need not be disclosed, for a witness to testify as to simple mathematical operations. *Bryant v. Farmers Ins. Exch*., 432 F.3d 1114, 1124 (10th Cir. 2005). Such testimony is admissible as lay opinion testimony under Fed. R. Evid. 701, and need not be disclosed prior to trial. *Id.* To the extent that such lay opinion testimony consists of calculations being performed on voluminous documents, summaries and charts are admissible as summation evidence under Fed. R. Evid. 1006.

While where feasible, damages calculations should be disclosed as part of a party's Rule 26 initial disclosures, such disclosure is impossible in a class action since initial disclosures are due prior to a class certification. Where Rule 26 initial disclosures cannot be made at the beginning of litigation, the Rules impose a duty to supplement such disclosures in a timely manner once the information becomes available. Fed. R. Civ. P. 26(e). However, formal supplementation under Rule 26(e) is unnecessary when the information has already been made known to the other side during the discovery process or in writing. *Id.* There is no specific time in which Rule 26(e) supplementations have to be made.

If a party fails to disclose the information required by Rule 26 and that information has not been otherwise made known to the other side during the discovery process pursuant to Rule 26(e), the Court has discretion to preclude the party form using that information at trial or may impose an alternative sanction. Fed. R. Civ. P. 37(c)(1). "When fashioning a remedy, the district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the

opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). However, the district court's discretion to impose a sanction for failure to make disclosures under Rule 26 narrows as the severity of the sanction increases. *Id.*

**B.  THE AUGUST 5, 2015 SPREADSHEET IS SUBSTANTIALLY IDENTICAL IN ALL RESPECTS TO RICHARD KROON'S AUGUST 2014 SPREADSHEET EXCEPT FOR A SINGLE ADDITIONAL SUMMATION THAT MULTIPLIES THE UNPAID HOURS WORKED PER EMPLOYEE PER WEEK BY THE STATUTORY MINIMUM WAGE IN EFFECT DURING THAT WEEK IN ORDER TO ARRIVE AT THE HOUR-BY-HOUR MINIMUM WAGE DAMAGES.**

Defendants misrepresent Plaintiffs' August 2015 spreadsheet as being wholly new, when it fact it is substantially identical to the spreadsheet Plaintiffs' expert Richard Kroon provided with his expert report on August 1, 2014 ("2014 Spreadsheet").

On August 1, 2014, Plaintiffs provided Kroon's expert report along with a spreadsheet, which provided summations of the voluminous driver logs produced.

For the short rest break damage claim, Kroon provided, for each driver per each workweek and in the aggregate, the number of short rest breaks a driver logged (*i.e.* off duty periods of 20 minutes or less) in a workweek, and the amount of aggregate time spent in such periods.  As provided in the August 1, 2014 spreadsheet, a summary of Defendant's driver logs demonstrates that class members logged just over 1.25 million such breaks during the class period, totaling 305,450.66 hours.  These summations of Defendants' records were disclosed previously and were provided in the first four rows of the 2014 spreadsheet.  (*See* Swidler Cert. Ex. 1-A) (Highlighting added).  The 2014 calculation thus plainly disclosed the number of hours

6

Plaintiffs contend they spent in short rest breaks. Werner admits - and Court has already held – that there is no material dispute as to Werner's failure to pay for such periods.

Moreover, the 2014 spreadsheet provided this information for each class member per each workweek. The 2014 spreadsheet thus provided the following information for Plaintiff Philip Petrone, employee number 484842 as to short rest breaks.

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Calculations for Claim 1: Short Rest Breaks | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | TOTAL | 13,622,240.86 | 1,250,217.00 | 305,450.66 | 13,927,691.52 | 148,929,894.92 | 779,127.59 | |
| 4 | Employee ID | Week Start | Time logged on duty (lines 3 or 4) | Number of breaks logged as 20 minutes or less | Aggregate number of hours logged in breaks of 20 minutes or less | Total hours of on duty time plus short rest breaks | Combined Pay | Short Rest Break Damages | |
| 317985 | 484842 | 7/12/2011 | 2.75 | 0 | - | 2.75 | 185.71 | - | |
| 317986 | 484842 | 7/19/2011 | 28.50 | 4 | 1.00 | 29.50 | 325.00 | - | |
| 317987 | 484842 | 7/26/2011 | 40.50 | 7 | 1.75 | 42.25 | 325.00 | - | |
| 317988 | 484842 | 8/2/2011 | 45.50 | 10 | 2.50 | 48.00 | 329.87 | 18.13 | |
| 317989 | 484842 | 8/9/2011 | 44.00 | 9 | 2.25 | 46.25 | 325.00 | 10.30 | |
| 317990 | 484842 | 8/16/2011 | - | 0 | - | - | 50.00 | - | |

(Swidler Cert. Ex. 1-A) (Highlighting added).

Minimum wage is also not a disputed material fact (and cannot be, as it is an undisputed legal requirement). To determine minimum wages due by applying the *Klingoffer* rule for Petrone, Kroon added to the amount of time logged in short rest breaks to all line 3 and 4 time (disclosed in column C), to determine the number of hours worked under this theory. That total is found in column F. Then, Kroon simply divided the amount paid to Petrone (disclosed in column G) by the number of hours worked. If the amount was less than minimum wage, the difference for the minimum wage due is found in column H. Thus, for workweek beginning 7/26/2011, Petrone logged 40.5 hours on duty, and 1.75 hours in compensable short rest breaks, totaling 42.25 hours of hours worked under this theory (*i.e.* line 3/4 time and short rest break time). Petrone was paid $325 for this workweek (shown in Column G). $325/$42.25 = $7.69, which is more than the applicable minimum wage for that workweek (the minimum wage was $7.25 per hour on July 26, 2011). Thus, column H shows no damages.

7

The hour-by-hour spreadsheet submitted on August 5, 2015, provides all the same information with just one additional column, utilizing the test which this Court held two weeks ago would be utilized to calculate damages. The new column, Column I, is highlighted in yellow below and is the only addition to the short rest break damage spreadsheet.

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Calculations for Claim 1: Short Rest Breaks | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | TOTAL | 13,622,240.86 | 1,250,217.00 | 305,450.66 | 13,927,691.52 | 148,929,894.92 | 779,127.59 | 2,164,231.58 |
| 4 | Employee ID | Week Start | Time logged on duty (lines 3 or 4) | Number of breaks logged at 20 minutes or less | Aggregate number of hours logged in breaks of 20 minutes or less | Total hours of on duty time plus short rest breaks | Combined Pay | Short Rest Break Damages (FLSA) | Short Rest Break Damages (NE) |
| 317985 | 484842 | 7/12/2011 | 2.75 | - | - | 2.75 | 185.71 | - | - |
| 317986 | 484842 | 7/19/2011 | 28.50 | 4.00 | 1.00 | 29.50 | 325.00 | - | 7.25 |
| 317987 | 484842 | 7/26/2011 | 40.50 | 7.00 | 1.75 | 42.25 | 325.00 | - | 12.69 |
| 317988 | 484842 | 8/2/2011 | 45.50 | 10.00 | 2.50 | 48.00 | 329.87 | 18.13 | 18.13 |
| 317989 | 484842 | 8/9/2011 | 44.00 | 9.00 | 2.25 | 46.25 | 325.00 | 10.30 | 16.31 |
| 317990 | 484842 | 8/16/2011 | - | - | - | - | 50.00 | - | - |

(Swidler Cert. Ex. 1-B) (Highlighting added).

To total damages for Petrone under the hour-by-hour rule, Kroon simply multiplied the previously disclosed number of hours spent in compensable short rest breaks by the minimum wage. Thus, for the workweek of July 26, 2011, Kroon will testify that the damages incurred under the hour-by-hour rule are $12.69, which is $7.25 multiplied by the 1.75 hours spent in such activities (where again, the 1.75 hours was already disclosed and is simply an undisputed summation of Defendants' business records). This amount is highlighted in yellow, and is the only addition to the short rest break damage calculation which has been made.

Similarly, for the sleeper berth damages, Kroon again just multiplied the number of compensable hours logged in a truck's sleeper berth (hours beyond 8 hours per day), which was already disclosed, by the applicable minimum wage. This previously disclosed information is highlighted in orange below, from an extract of the 2014 sleeper berth spreadsheet. Plaintiffs again use Plaintiff Petrone as an example, but the same multiplication was done for each class member.

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Calculations for Claim 2: Unpaid Sleeper Berth Time | | | | | | | | | |
| 2 | | | | | | | | | | |
| 3 | | Total | 6,155,079.28 | 13,622,240.86 | 19,777,320.14 | 134,946,615.59 | 27,502,284.57 | 27,440,151.97 | | |
| 4 | Employee ID | Week Start | Total weekly hours logged in sleeper berth beyond 8 hours per day | Time logged on duty (lines 3 or 4) | Total hours of on duty time plus sleeper berth time beyond 8 hours per day | Combined Pay | Damages attributable to Sleeper Berth Damages | Sleeper Berth Damages minus damages paid for sleeper berth time take as short rest breaks | | |
| 234605 | 484842 | 7/12/2011 | - | 2.75 | 2.75 | 185.71 | - | - | | |
| 234606 | 484842 | 7/19/2011 | 8.00 | 28.50 | 36.50 | 325.00 | - | - | | |
| 234607 | 484842 | 7/26/2011 | 12.75 | 40.50 | 53.25 | 325.00 | 61.05 | 61.05 | | |
| 234608 | 484842 | 8/2/2011 | 4.25 | 45.50 | 49.75 | 329.87 | 30.81 | 30.81 | | |
| 234609 | 484842 | 8/9/2011 | 3.00 | 44.00 | 47.00 | 325.00 | 15.73 | 15.73 | | |

(Swidler Cert. Ex. 1-C) (Highlighting added).

To calculate the sleeper berth damages under the hour-by-hour analysis, Plaintiffs again just multiplied the number of weekly hours logged in a trucks' sleeper berth beyond 8 hours per day by the minimum wage. This multiplication is represented in column I below. And to ensure that sleeper berth damages are not also utilized in the short rest break damage calculations, Plaintiffs then have subtracted number by the amount of time spent in short rest breaks that were logged as line 2 for the workweek (this net amount is found in Column J).[1]

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Calculations for Claim 2: Unpaid Sleeper Berth Time | | | | | | | | | |
| 2 | | | | | | | | | | |
| 3 | | Total | 6,155,079.28 | 13,622,240.86 | 19,777,320.14 | 134,946,615.59 | 27,502,284.57 | 27,440,151.97 | 43,502,239.33 | 43,430,369.28 |
| 4 | Employee ID | Week Start | Total weekly hours logged in sleeper berth beyond 8 hours per day | Time logged on duty (lines 3 or 4) | Total hours of on duty time plus sleeper berth time beyond 8 hours per day | Combined Pay | Damages attributable to Sleeper Berth Damages (FLSA) | Sleeper Berth Damages minus damages paid for sleeper berth time take as short rest breaks (FLSA) | Damages attributable to Sleeper Berth Damages (NE) | Sleeper Berth Damages minus damages paid for sleeper berth time take as short rest breaks (NE) |
| 234605 | 484842 | 7/12/2011 | - | 2.75 | 2.75 | 185.71 | - | - | - | - |
| 234606 | 484842 | 7/19/2011 | 8.00 | 28.50 | 36.50 | 325.00 | - | - | 58.00 | 58.00 |
| 234607 | 484842 | 7/26/2011 | 12.75 | 40.50 | 53.25 | 325.00 | 61.05 | 61.05 | 92.44 | 92.44 |
| 234608 | 484842 | 8/2/2011 | 4.25 | 45.50 | 49.75 | 329.87 | 30.81 | 30.81 | 30.81 | 30.81 |
| 234609 | 484842 | 8/9/2011 | 3.00 | 44.00 | 47.00 | 325.00 | 15.73 | 15.73 | 21.75 | 21.75 |

---

[1] Because it is a rare event for class members to log such breaks as line 2 (instead of line 1), the subtraction is extremely nominal. As can be seen above, the aggregate amount subtracted from all class members' damages to prevent double counting is $70,000, or 1/10th of 1% of the total sleeper berth damages. Additionally, while the amount of hours logged in a truck's sleeper berth which were not also short rest breaks is not visible in the spreadsheet, even that number was produced by virtue of the SQL code Kroon produced on August 1, 2014, which would provide that number when the code was run.

(Swidler Cert. Ex. 1-D) (Highlighting added).

The same simple arithmetic was performed on each of the Named Plaintiffs' damages (as well all class members).  For example, Kroon's 2014 spreadsheet applying the *Klinghoffer* rule for Plaintiff Fisher provided as follows:

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Calculations for Claim 1: Short Rest Breaks | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | TOTAL | 13,622,240.86 | 1,250,217.00 | 305,450.66 | 13,927,691.52 | 148,929,894.92 | 779,127.59 | |
| 4 | Employee ID | Week Start | Time logged on duty (lines 3 or 4) | Number of breaks logged as 20 minutes or less | Aggregate number of hours logged in breaks of 20 minutes or less | Total hours of on duty time plus short rest breaks | Combined Pay | Short Rest Break Damages | |
| 148898 | | 450410 | 4/7/2009 | 21.00 | 2 | 0.50 | 21.50 | 342.86 | - | |
| 148899 | | 450410 | 4/14/2009 | 43.75 | 5 | 1.25 | 45.00 | 300.00 | - | |
| 148900 | | 450410 | 4/21/2009 | 28.25 | 1 | 0.25 | 28.50 | 300.00 | - | |
| 148901 | | 450410 | 4/28/2009 | 67.25 | 2 | 0.50 | 67.75 | 440.48 | 3.28 | |
| 148902 | | 450410 | 5/5/2009 | 36.25 | 6 | 1.50 | 37.75 | 317.85 | - | |
| 148903 | | 450410 | 5/12/2009 | 55.00 | 4 | 1.00 | 56.00 | 360.25 | 6.55 | |
| 148904 | | 450410 | 5/19/2009 | 66.00 | 1 | 0.25 | 66.25 | 432.30 | 1.64 | |
| 148905 | | 450410 | 5/26/2009 | 31.50 | 1 | 0.25 | 31.75 | 325.00 | - | |
| 148906 | | 450410 | 6/2/2009 | 32.75 | 5 | 1.25 | 34.00 | 342.86 | - | |
| 148907 | | 450410 | 6/9/2009 | 45.25 | 4 | 1.00 | 46.25 | 350.00 | - | |
| 148908 | | 450410 | 6/16/2009 | 39.00 | 1 | 0.25 | 39.25 | 430.00 | - | |
| 148909 | | 450410 | 6/23/2009 | - | 0 | - | - | - | - | |

(Swidler Cert. Ex. 1-E) (Highlighting added).

The hour-by-hour calculation simply again adds the additional column I, which simply multiplies the previously disclosed amount of time found in column E by the applicable minimum wage.[2]

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Calculations for Claim 1: Short Rest Breaks | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | TOTAL | 13,622,240.86 | 1,250,217.00 | 305,450.66 | 13,927,691.52 | 148,929,894.92 | 779,127.59 | 2,164,231.58 |
| 4 | Employee ID | Week Start | Time logged on duty (lines 3 or 4) | Number of breaks logged as 20 minutes or less | Aggregate number of hours logged in breaks of 20 minutes or less | Total hours of on duty time plus short rest breaks | Combined Pay | Short Rest Break Damages (FLSA) | Short Rest Break Damages (NE) |
| 148898 | 450410 | 4/7/2009 | 21.00 | 2.00 | 0.50 | 21.50 | 342.86 | - | 3.28 |
| 148899 | 450410 | 4/14/2009 | 43.75 | 5.00 | 1.25 | 45.00 | 300.00 | - | 8.19 |
| 148900 | 450410 | 4/21/2009 | 28.25 | 1.00 | 0.25 | 28.50 | 300.00 | - | 1.64 |
| 148901 | 450410 | 4/28/2009 | 67.25 | 2.00 | 0.50 | 67.75 | 440.48 | 3.28 | 3.28 |
| 148902 | 450410 | 5/5/2009 | 36.25 | 6.00 | 1.50 | 37.75 | 317.85 | - | 9.83 |
| 148903 | 450410 | 5/12/2009 | 55.00 | 4.00 | 1.00 | 56.00 | 360.25 | 6.55 | 6.55 |
| 148904 | 450410 | 5/19/2009 | 66.00 | 1.00 | 0.25 | 66.25 | 432.30 | 1.64 | 1.64 |
| 148905 | 450410 | 5/26/2009 | 31.50 | 1.00 | 0.25 | 31.75 | 325.00 | - | 1.64 |
| 148906 | 450410 | 6/2/2009 | 32.75 | 5.00 | 1.25 | 34.00 | 342.86 | - | 8.19 |
| 148907 | 450410 | 6/9/2009 | 45.25 | 4.00 | 1.00 | 46.25 | 350.00 | - | 6.55 |
| 148908 | 450410 | 6/16/2009 | 39.00 | 1.00 | 0.25 | 39.25 | 430.00 | - | 1.64 |
| 148909 | 450410 | 6/23/2009 | - | - | - | - | - | - | - |

---

[2] The minimum wage in Nebraska from April 2009 to June of 2009, the time when Plaintiff Fisher was employed, was $6.55 per hour. *See, e.g.,* Expert Report of Richard Kroon, ECF Doc. No. 304-3, at p. 3; to determine the value of column I, one just multiplies the number of hours in E by $6.55.

10

(Swidler Cert. Ex. 1-F) (Highlighting added).

As an additional example, here is the addition performed by Named Plaintiffs Pankz and Singh. Again, the calculations simply multiply column E by the applicable minimum wage. There is nothing newly disclosed in the hour-by-hour spreadsheet *at all*.  It is just simple math which Kroon would be permitted to testify about in front of a jury regardless of whether Plaintiffs introduced a demonstrative spreadsheet which accurately provides the basic arithmetic.

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Calculations for Claim 1: Short Rest Breaks | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | TOTAL | 13,622,240.86 | 1,250,217.00 | 305,450.66 | 13,927,691.52 | 148,929,894.92 | 779,127.59 | |
| 4 | Employee ID | Week Start | Time logged on duty (lines 3 or 4) | Number of breaks logged as 20 minutes or less | Aggregate number of hours logged in breaks of 20 minutes or less | Total hours of on duty time plus short rest breaks | Combined Pay | Short Rest Break Damages | |
| 275604 | 469046 | 7/20/2010 | 22.25 | 2 | 0.50 | 22.75 | 371.43 | - | |
| 275605 | 469046 | 7/27/2010 | 22.75 | 0 | - | 22.75 | 325.00 | - | |
| 275606 | 469046 | 8/3/2010 | 43.25 | 5 | 1.25 | 44.50 | 325.00 | - | |
| 275607 | 469046 | 8/10/2010 | 47.00 | 2 | 0.50 | 47.50 | 340.75 | 3.63 | |
| 275608 | 469046 | 8/17/2010 | 24.25 | 1 | 0.25 | 24.50 | 189.29 | - | |
| 275609 | 469046 | 8/24/2010 | - | 0 | - | - | 542.86 | - | |
| 275610 | 469046 | 8/31/2010 | 38.25 | 9 | 2.25 | 40.50 | 325.00 | - | |
| 275611 | 469046 | 9/7/2010 | 60.50 | 8 | 2.00 | 62.50 | 438.62 | 14.50 | |
| 275612 | 469046 | 9/14/2010 | 47.00 | 7 | 1.75 | 48.75 | 342.86 | 10.59 | |
| 275613 | 469046 | 9/21/2010 | 34.25 | 5 | 1.25 | 35.50 | 350.00 | - | |
| 275614 | 469046 | 9/28/2010 | 43.75 | 1 | 0.25 | 44.00 | 450.00 | - | |
| 275615 | 469046 | 10/5/2010 | 12.00 | 3 | 0.75 | 12.75 | 207.14 | - | |
| 275616 | 469046 | 10/12/2010 | - | 0 | - | - | | - | |

(Swidler Cert. Ex. 1-G) (Highlighting added).

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Calculations for Claim 1: Short Rest Breaks | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | TOTAL | 13,622,240.86 | 1,250,217.00 | 305,450.66 | 13,927,691.52 | 148,929,894.92 | 779,127.59 | 2,164,231.58 |
| 4 | Employee ID | Week Start | Time logged on duty (lines 3 or 4) | Number of breaks logged as 20 minutes or less | Aggregate number of hours logged in breaks of 20 minutes or less | Total hours of on duty time plus short rest breaks | Combined Pay | Short Rest Break Damages (FLSA) | Short Rest Break Damages (NE) |
| 275604 | 469046 | 7/20/2010 | 22.25 | 2.00 | 0.50 | 22.75 | 371.43 | - | 3.63 |
| 275605 | 469046 | 7/27/2010 | 22.75 | - | - | 22.75 | 325.00 | - | - |
| 275606 | 469046 | 8/3/2010 | 43.25 | 5.00 | 1.25 | 44.50 | 325.00 | - | 9.06 |
| 275607 | 469046 | 8/10/2010 | 47.00 | 2.00 | 0.50 | 47.50 | 340.75 | 3.63 | 3.63 |
| 275608 | 469046 | 8/17/2010 | 24.25 | 1.00 | 0.25 | 24.50 | 189.29 | - | 1.81 |
| 275609 | 469046 | 8/24/2010 | - | - | - | - | 542.86 | - | - |
| 275610 | 469046 | 8/31/2010 | 38.25 | 9.00 | 2.25 | 40.50 | 325.00 | - | 16.31 |
| 275611 | 469046 | 9/7/2010 | 60.50 | 8.00 | 2.00 | 62.50 | 438.62 | 14.50 | 14.50 |
| 275612 | 469046 | 9/14/2010 | 47.00 | 7.00 | 1.75 | 48.75 | 342.86 | 10.59 | 12.69 |
| 275613 | 469046 | 9/21/2010 | 34.25 | 5.00 | 1.25 | 35.50 | 350.00 | - | 9.06 |
| 275614 | 469046 | 9/28/2010 | 43.75 | 1.00 | 0.25 | 44.00 | 450.00 | - | 1.81 |
| 275615 | 469046 | 10/5/2010 | 12.00 | 3.00 | 0.75 | 12.75 | 207.14 | - | 5.44 |
| 275616 | 469046 | 10/12/2010 | - | - | - | - | - | - | - |

(Swidler Cert. Ex. 1-H) (Highlighting added).

|  | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Calculations for Claim 1: Short Rest Breaks | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | TOTAL | 13,622,240.86 | 1,250,217.00 | 305,450.66 | 13,927,691.52 | 148,929,894.92 | 779,127.59 | |
| 4 | Employee ID | Week Start | Time logged on duty (lines 3 or 4) | Number of breaks logged as 20 minutes or less | Aggregate number of hours logged in breaks of 20 minutes or less | Total hours of on duty time plus short rest breaks | Combined Pay | Short Rest Break Damages | |
| 39710 | 435431 | 9/9/2008 | 36.00 | 3 | 0.75 | 36.75 | 428.57 | - | |
| 39711 | 435431 | 9/16/2008 | - | 0 | - | - | 167.86 | - | |
| 39712 | 435431 | 9/23/2008 | 30.25 | 3 | 0.75 | 31.00 | 375.00 | - | |
| 39713 | 435431 | 9/30/2008 | 7.25 | 1 | 0.25 | 7.50 | 217.85 | - | |
| 39714 | 435431 | 10/7/2008 | - | 0 | - | - | - | - | |
| 39715 | 435431 | 5/31/2011 | - | 0 | - | - | - | - | |
| 39716 | 435431 | 6/7/2011 | 8.75 | 0 | - | 8.75 | 325.00 | - | |
| 39717 | 435431 | 6/14/2011 | 43.25 | 6 | 1.50 | 44.75 | 375.00 | - | |
| 39718 | 435431 | 6/21/2011 | 53.00 | 11 | 2.75 | 55.75 | 386.06 | 18.13 | |
| 39719 | 435431 | 6/28/2011 | 60.00 | 10 | 2.50 | 62.50 | 535.00 | - | |
| 39720 | 435431 | 7/5/2011 | 8.00 | 1 | 0.25 | 8.25 | 160.71 | - | |
| 39721 | 435431 | 4/10/2012 | - | 0 | - | - | - | - | |
| 39722 | 435431 | 4/17/2012 | 3.75 | 0 | - | 3.75 | 364.29 | - | |
| 39723 | 435431 | 4/24/2012 | 17.75 | 4 | 1.00 | 18.75 | 367.86 | - | |
| 39724 | 435431 | 5/1/2012 | - | 0 | - | - | - | - | |
| 39725 | 435431 | 5/8/2012 | 19.75 | 3 | 0.75 | 20.50 | 410.71 | - | |
| 39726 | 435431 | 5/15/2012 | 18.50 | 1 | 0.25 | 18.75 | 307.15 | - | |

(Swidler Cert. Ex. 1-I) (Highlighting added).

|  | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Calculations for Claim 1: Short Rest Breaks | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | TOTAL | 13,622,240.86 | 1,250,217.00 | 305,450.66 | 13,927,691.52 | 148,929,894.92 | 779,127.59 | 2,164,231.58 |
| 4 | Employee ID | Week Start | Time logged on duty (lines 3 or 4) | Number of breaks logged as 20 minutes or less | Aggregate number of hours logged in breaks of 20 minutes or less | Total hours of on duty time plus short rest breaks | Combined Pay | Short Rest Break Damages (FLSA) | Short Rest Break Damages (NE) |
| 39710 | 435431 | 9/9/2008 | 36.00 | 3.00 | 0.75 | 36.75 | 428.57 | - | 4.91 |
| 39711 | 435431 | 9/16/2008 | - | - | - | - | 167.86 | - | - |
| 39712 | 435431 | 9/23/2008 | 30.25 | 3.00 | 0.75 | 31.00 | 375.00 | - | 4.91 |
| 39713 | 435431 | 9/30/2008 | 7.25 | 1.00 | 0.25 | 7.50 | 217.85 | - | 1.64 |
| 39714 | 435431 | 10/7/2008 | - | - | - | - | - | - | - |
| 39715 | 435431 | 5/31/2011 | - | - | - | - | - | - | - |
| 39716 | 435431 | 6/7/2011 | 8.75 | - | - | 8.75 | 325.00 | - | - |
| 39717 | 435431 | 6/14/2011 | 43.25 | 6.00 | 1.50 | 44.75 | 375.00 | - | 10.88 |
| 39718 | 435431 | 6/21/2011 | 53.00 | 11.00 | 2.75 | 55.75 | 386.06 | 18.13 | 19.94 |
| 39719 | 435431 | 6/28/2011 | 60.00 | 10.00 | 2.50 | 62.50 | 535.00 | - | 18.13 |
| 39720 | 435431 | 7/5/2011 | 8.00 | 1.00 | 0.25 | 8.25 | 160.71 | - | 1.81 |
| 39721 | 435431 | 4/10/2012 | - | - | - | - | - | - | - |
| 39722 | 435431 | 4/17/2012 | 3.75 | - | - | 3.75 | 364.29 | - | - |
| 39723 | 435431 | 4/24/2012 | 17.75 | 4.00 | 1.00 | 18.75 | 367.86 | - | 7.25 |
| 39724 | 435431 | 5/1/2012 | - | - | - | - | - | - | - |
| 39725 | 435431 | 5/8/2012 | 19.75 | 3.00 | 0.75 | 20.50 | 410.71 | - | 5.44 |
| 39726 | 435431 | 5/15/2012 | 18.50 | 1.00 | 0.25 | 18.75 | 307.15 | - | 1.81 |

(Swidler Cert. Ex. 1-J) (Highlighting added).

As can be plainly seen when one actually examines the spreadsheet, Plaintiffs have not at the eleventh hour changed the evidence, theories, or basis for their damage calculations. Instead, they simply performed multiplied the number of hours (already disclosed) by the applicable minimum wage, a direction which is consistent with Court's Order of August 3, 2015.

Plaintiffs explain below **why** the arithmetic performed to convert hours worked into new damages does not constitute expert testimony, but the point here is that Defendants mislead the Court in arguing that Plaintiffs have produced a ***new*** 14,000 page spreadsheet one month before trial that would require hundreds of man-hours to analyze. The only disputed calculations from Kroon's spreadsheets are whether Kroon correctly calculated the number of hours worked under both of Plaintiffs' legal theories, i.e., the figures contained in Column E of the short-rest-break spreadsheet and Column C of the unpaid-sleeper-berth spreadsheet.   And **those** figures and calculations were disclosed in the 2014 spreadsheet and expert report and those numbers have not been altered or changed. It will not take months to analyze the simple arithmetic which was performed on already disclosed numbers.   Instead, the grade-school type arithmetic now performed is done simply to apply Kroon's previously disclosed technical findings (*i.e.* the number of hours worked by class members under Plaintiffs' two different legal claims) to the Court's recent ruling holding that Plaintiffs may recover minimum wage for each unpaid hour worked.

### C. THE HOUR-BY-HOUR MINIMUM WAGE DAMAGES CALCULATION CONTAINED IN THE AUGUST 5, 2015 SPREADSHEET IS A MATTER OF ARITHMETIC, NOT AN EXPERT OPINION, AND ACCORDINGLY, DID NOT NEED TO BE DISCLOSED PURSUANT TO THE REQUIREMENTS OF RULE 26(A)(3).

Defendant argues that the 2015 spreadsheet constitutes expert testimony and as such is an untimely expert disclosure under Rule 26(a)(3). As Plaintiffs demonstrate above, the 2015 spreadsheet is identical to the 2014 spreadsheet except that it applies Kroon's technical findings to the Court's order issued August 3, 2015 by utilizing simple multiplication. For the short rest break claim, Column I is simply Column E (amount of unpaid work) multiplied by the minimum wage that was in effect during the week in which the work occurred (the start-date of which is

contained in Column B).  And as to the sleeper berth sheet, Column I is simply column C (hours in sleeper berth beyond 8 hours per day) multiplied by the minimum wage in effect during the week in which the work occurred (the start-date of which is contained in Column B).  Column J, reduces the number in Column I, if necessary, so that sleeper berth damages do not contain damages already incurred from the short rest break claim.

Accordingly, the hour-by-hour numbers are simply a matter of arithmetic being applied to figures that were disclosed by Kroon with his expert report in August 1, 2014. Expert testimony is not needed to perform those simple arithmetic calculations, and accordingly, Defendants' argument that the 2015 spreadsheet should be excluded for being an untimely expert report fails.  Simply put, even in the absence of the new spreadsheet, Kroon could still apply the hour-by-hour calculations at trial by simply performing basic math, either by hand or with a calculator, while on the witness stand.  Thus, his use of a demonstrative exhibit at trial which simply provides the results of such basic arithmetic and which prevents the necessity of going through the calculations one-by-one (which would result in an impracticably lengthy trial and a colossal waste of time, for the Court, the Parties, and the jury) is also permissible.

Any witness at trial may perform simple arithmetic to numbers without the necessity of conforming with the requirements of expert testimony and disclosure.  For example, in *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005), the Tenth Circuit Court of Appeals held that the lower court abused its discretion by not allowing a lay witness to provide a relatively simple mathematical calculation in a summary judgment proceeding pursuant to Fed. R. Evid. 1006 and 701, because such evidence could have been utilized at trial.  *Id.*  ("A mathematical calculation well within the ability of anyone with a grade-school education is, in our opinion, more aptly characterized as a lay opinion under Fed. R. Evid. 701.");  *see also*

*United States v. Powers,* 578 Fed. Appx. 763, 774 (10th Cir. 2014) (holding that calculation of debt-to-income ratios constituted the type of basic math that lay witnesses may testify to).

Likewise, in *United States v. Hamaker*, a non-expert witness testified as the amount of corporate money a CEO used to pay for personal projects by reviewing the company's ledgers. 455 F.3d 1316, 1331-1332 (11th Cir. 2006). The defendant challenged such testimony, but the Eleventh Circuit affirmed its use, holding that where the witness simply added and subtracted numbers from a long catalog of the company's records, and then compared those numbers in a straightforward fashion, the activity was within the capacity of any reasonable lay person and expert testimony was not needed. *Id.* Similarly, in *United States v. Madison*, the Sixth Circuit held that non-expert testimony could be used to review a defendant's personal accounts and advance the opinion that the defendant could not afford to purchase certain properties without embezzling funds, holding that such an analysis was simply a matter of arithmetic and could be admitted as lay opinion testimony. 226 Fed. Appx. 535, 544 (6th Cir. 2007). In *Pac. Enters. v. Fed. Ins. Co.*, the Ninth Circuit upheld the admissibility of an accountant's lay opinion testimony as to the amount of a loss based on her review of accounting records. 189 Fed. Appx. 591, 592 (9th Cir. 2006).

In addition to the Courts of Appeal of the Sixth, Ninth, Tenth, and Eleventh Circuits, many district courts have held that arithmetic, averages, and the like can be presented to the jury as lay opinion testimony under Rule 701 and do not require expert testimony. For instance, in *Pryor v. Aerotek Scientific, LLC*, a wage and hour case, the plaintiffs' **lawyer** performed an analysis of employee's log-in times, and it was undisputed that the lawyer was not any sort of statistical expert; nevertheless, the court held that the lawyer's analysis and average was admissible lay opinion testimony. 278 F.R.D. 516, 534 (C.D. Cal. 2011).

In *Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1326 (N.D. Ala. 2008), another wage-and-hour case, the Department of Labor engaged a systems analyst to review the defendants' punch-in records in order to determine the number of times the defendants' employees punched a time clock during a single shift and then punched back in for lunch. *Id.* Notably, the analyst could not simply "count the punches" but had to use inferences and assumptions in order to reach his opinion. *Id.* Nevertheless, the court found that the analyst's opinion was admissible as a lay opinion under Rule 701, as the inferences used did not exceed the understanding of a lay person or require expert knowledge. *Id. See also American Gen. Life Ins. Co. v. Schoenthal Family, LLC,* 248 F.R.D. 298, 306 (N.D. Ga. 2008) (allowing lay testimony regarding the calculation of acceptable policy ranges because it involved a "straightforward arithmetic procedure").

The new arithmetic performed in the 2015 spreadsheet does not involve any of Richard Kroon's specialized knowledge or skill. While the calculations involve multiplying many thousands of previously disclosed totals (*i.e.* the hours worked in each period of compensable time) by the applicable minimum wage, that calculation is simple enough that any lay person with a calculator could do it. More importantly, the explanation of that calculation can easily be understood and assessed by the lay jury members without any expert testimony. Accordingly, the hour-by-hour calculations are not expert testimony, and did not need to be included in Plaintiffs' expert Richard Kroon's expert report. Thus, to the extent that the Defendants argue that the 2015 spreadsheet should be excluded because it was not included in Kroon's expert report, Defendants' motion should be denied. However, as demonstrated below, the calculations were included in Plaintiffs' August 2014 expert report providing a further basis for denying Defendants' motion.

**D. KROON SPECIFICALLY DISCLOSED THE HOUR-BY-HOUR DAMAGES CALCULATION AND THE SQL CODE USED TO PERFORM THAT CACLUATION IN HIS AUGUST 2014 EXPERT REPORT, AND DEFENDANT'S EXPERT ANALYZED THAT CALCULATION.**

The Court should also not exclude the August 2015 hour-by-hour damages calculation because Kroon's August 1, 2014, report provided Defendants with the **exact** hour-by-hour damage formula now used. Kroon used the hour-by-hour damages formula as a component of his method for calculating class members' damages on a weekly basis under the *Klinghoffer* rule in his expert report. Defendants' own expert specifically analyzed that formula, understood that it calculated damages on an hour-by-hour basis, and opined that it was of little interest because if used, it would **"drastically overstate damages."** *See* Expert Report of Robert Topel, "Use of Two Calculations," at p. 20,

Because Plaintiffs are not pursuing damages for unpaid line 3/4 time, Kroon needed to isolate any damages which stemmed from unpaid line 3/4 time in each of his calculations. **To do this, Kroon determined the total amount of minimum wage due under an hour-by-hour analysis for the unpaid short rest breaks and unpaid sleeper berth time, and then *compared that number* to the number computed under the *Klinghoffer* rule**. In order to compute appropriate *Klinghoffer* damages, Kroon then took the lower of the two calculations. Accordingly, the August 1, 2014 report fully informed Defendants of Kroon's method of calculating hour-by-hour damages over which they now feign surprise.

Kroon's August 1, 2014, report described the hour-by-hour formula to determine short rest break damages as follows:  "(Total 1 2 Minutes) divided by 60 (to convert to hours) multiplied by the applicable minimum wage."  Kroon continues:

> For example, for the week starting 3/9/2010, employee 34527 logged 915 minutes on lines 3 and 4.  He also took 1 break during the pay period

which was 15 minutes in length.  Finally, his CombinedPay was $110.71. Based on these numbers, his damages were calculated as follows:

1.  Formula 1: (915 [minutes on lines 3 and 4] + 15 [minutes logged for short rest breaks]) / 60 [to convert to hours] – ($110.71 [CombinedPay] / 7.25 [applicable minimum wage]) * 7.25 = $1.67

2.  **Formula 2: 15 [minutes logged for short rest breaks] / 60 [to convert to hours] * 7.25 = $1.81**

(Kroon, August 1, 2014 Report at pp. 5-6, ECF Doc. No. 304-3) (emphasis added).

While Kroon applied the *Klinghoffer* rule in his August 1, 2014 report, and thus the August 1, 2014 spreadsheet showed damages of $1.67, in order to ensure that the *Klinghoffer* damages were limited to minimum wage violations based on Line 1 and Line 2 time, Kroon had to calculate the hour-by-hour damage calculations for every employee for every week. **Accordingly, the hour-by-hour damage calculations for short rest breaks were disclosed as part of Plaintiff's methodology for calculating *Klinghoffer* damages and were present in the SQL code provided to Defendants more than one year ago**.

Similarly, Kroon's August 1, 2014 report described the hour-by-hour formula to determined sleeper berth damages as follows: "Multiply the 'Weekly Compensable Sleeper Time' [*i.e.* sleeper berth time beyond 8 hours per day] by the applicable minimum wage." (Kroon August 1, 2014 Report at p. 7).  Kroon provides the following example:

> [F]or the week starting 8/16/2011, employee 66745 logged 2,370 minutes on lines 3 and 4.  He also logged 750 minutes on line 2 (12.5 hours) beyond 8 hours per day.  Finally, his CombinedPay was $325.00.  Based on these numbers, his damages were calculated as follows:
>
> 1.  Formula 1: (2,370 [minutes on lines 3 and 4] + 750 [minutes logged on line 2 beyond 8 hours per day]) / 60 [to convert to hours] – ($325.00 [CombinedPay] / 7.25 [applicable minimum wage]) * 7.25 = $51.98
>
> 2.  **Formula 2: 12.5 [hours logged on line 2 beyond 8 hours per day] * 7.25 = $90.63**

18

(Kroon August 1, 2014 Report at p. 7) (Emphasis Added). While Kroon again, on the Excel spreadsheet, extracted the numerical value found under formula 1, the SQL code, which generated the results showing the hour-by-hour damages, was provided.

Moreover, Defendants' expert Robert Topel reviewed Kroon's use of both the weekly *Klinghoffer* damages calculation and the hour-by-hour damages calculation, understood that Kroon was using an hour-by-hour damages calculation as part of his arrival at a final damages figure, and opined that the use of such an hour-by-hour damages calculation was inappropriate because it would "drastically overstate damages." *See,* Expert Report of Robert Topel, December 5, 2014, at p. 20, ECF Doc. No. 308-2. Topel describes his understanding of the two formulas as follows:

> Mr. Kroon claims to use two separate formulas to calculate damages and then relies on whichever calculation produces the lower dollar amount. **While he does do this**, he implies that this is a conservative approach when in actuality it would be incorrect to use the calculation that resulted in the higher amount under Plaintiffs' theory of damages.
>
> By using whatever calculation results in the lower dollar amount, **Kroon is allowing for amounts paid above the minimum wage to offset any potential damages which Plaintiffs claim are owed for off-duty damages.** For example, if a driver was paid $362.50 for 40 hours of work, but Plaintiffs claim that the driver actually should have been paid for 10 hours of sleeper berth time, damages would be $0 under Plaintiffs' theory since the driver was paid the minimum wage of $7.25 per hour for 50 hours ($362.50 divided by $7.25 equals 50). **Under the two separate formulates used by Kroon he would calculate damages of $0 and $72.50** and then he takes the lower dollar amount of $0. This is not a conservative approach. **If Kroon took the larger damage amount, he would drastically overstate damages**, even under Plantiffs' theory."

*Id.* (emphasis added).

Notably, the hypothetical driver who was paid $362.50 for 40 hours of paid work and 10 hours of unpaid work is an example created by Topel to **illustrate** Topel's understanding of Kroon's two formulas for calculating damages. Topel **understands** that Kroon's **second formula** calculates damages simply by multiplying the amount of claimed unpaid work by the minimum wage (10 hours of unpaid work * $7.25 = $72.50). Kroon described the use of the first formula instead of the second formula as conservative, since it is absolutely true that *Klinghoffer* is a more conservative method of calculating damages than an hour-by-hour damages calculation. Topel goes further, and states that it would not be less conservative to use the second calculation, but incorrect, because using that second calculation would "**drastically overstate damages**" – i.e., by calculating damages on an hour-by-hour basis instead of by using the *Klinghoffer* rule to allow for "amounts paid over the minimum wage to offset any potential damages which Plaintiffs are owed for off-duty damages."

Accordingly, not only did Kroon disclose that he was calculating hour-by-hour damages as part of his calculation of damages in this case, **Topel understood that Kroon was calculating hour-by-hour damages and opined that doing so was incorrect because it would drastically overstate Plaintiffs' damages**.

At the end of his expert report, Kroon explicitly stated that Plaintiffs were also seeking damages under the less-conservative hour-by-hour rule, and that this meant that:

> "for any unpaid time, regardless of the number of hours the employee worked during a workweek and regardless of the amount the employee was paid during the workweek, the employee would be entitled to damages for unpaid sleeper berth time (in excess of 8 hours per day) and short rest break time. I am able to perform such calculations (**and in fact, have already done so as such math is inherent in the calculations I performed above**) should the Court determine liability under such a basis.

(*See* Expert Report of Richard Kroon at 9, ECF Doc. No. 304-3).

20

Thus, Kroon was explicit in disclosing that Plaintiffs were seeking hour-by-hour damages in the alternative to *Klinghoffer* damages and that the calculations he set forth in the body of his expert report **calculated such hour-by-hour damages.** Moreover, Defendants cannot claim unfair surprise, because their expert, Robert Topel, reviewed those calculations and devoted a specific section of his report to explaining that Kroon was performing both an hour-by-hour damages calculation and a *Klinghoffer* damages calculation and that Topel incorrectly believed the *Klinghoffer* damages calculation was the correct methodology to be used. (*See* Expert Report of Robert Topel at 20, "Use of Two Calculations," ECF Doc. No. 308-2).

Accordingly, Kroon's hour-by-hour damage calculations were disclosed both inherently and overtly.  Plaintiffs also disclosed the results of *all* of Kroon's calculations previously by providing the SQL code Kroon had used with Kroon's expert report produced on August 1, 2014.  And because the hour-by-hour damages were computed in the SQL code (and Kroon explicitly disclosed that this SQL code computed this number in his written report provided on August 1, 2014), Defendants are incorrect to assert that the 2015 spreadsheet, which simply extracts these calculations which were already provided (albeit, in SQL, and not in Excel) contains new undisclosed and surprising computations.  The reality is that Defendants were well aware of these computations previously, were provide all the code which generates these calculations, and had multiple opportunities to depose Kroon on these calculations and submit expert rebuttal.  **And in fact, Defendants did just that**, by having Topel argue that the hour-by-hour damages formula Kroon disclosed as part of his August 1, 2014, expert report would drastically overstate Plaintiffs' damages, and by attacking Kroon on his calculations regarding the number of hours worked in each of these categories, which is applicable regardless of whether damages are computer under the *Klinghoffer* rule or on an hour-by-hour basis.

21

Defendants cannot now claim that they are surprised or prejudiced by the updated damages spreadsheet containing the final calculations of the class members' hour-by-hour damages, since all of the opinions, computations, and calculations that summation is based on were disclosed in Kroon's August 1, 2014, expert report. Accordingly, Defendants' motion *in limine* should be denied.

E.   **EVEN IF THE 2015 SPREADSHEET CONSTITUTED EXPERT TESTIMONY, IT IS NOT UNTIMELY BECAUSE IT FALLS WITHIN THE SCOPE OF PLAINTIFFS' 2014 EXPERT REPORT AS IT IS BASED ON THE SAME METHODOLOGIES AND DATA DISCLOSED IN THE 2014 EXPERT REPORT.**

Even if this Court were to find that the new multiplications of the 2015 spreadsheet constituted expert testimony, and even if the Court were to find that those calculations were not explicitly disclosed in the August 1, 2014, expert report, Defendants' motion would still warrant denial because those calculations fall well within the scope of Kroon's 2014 expert report and the opinions he stated he would testify to.

The Eighth Circuit has specifically held that an expert is allowed to expand his testimony to address and answer logical inferences as long as those inferences are drawn only from material and opinions that were previously disclosed in the expert report. *See Thudium v. Allied Prods. Corp.*, 36 F.3d 767, 770 (8th Cir. Mo. 1994). In *Thudium*, a grain auger had collapsed and injured the plaintiff, and the plaintiff sued for negligence and strict liability arguing that the auger had been designed with an unreasonable defect that had caused the injury. *Id.* at 768. Prior to trial, the plaintiff's expert had prepared an expert report that detailed several defects in the auger's design. *Id.* at 769. The expert report did not contain any opinion as to the specific cause of the accident. *Id.* at 770.  At trial, the expert testified that while he had no opinion as to which specific defect caused the defect, he did believe that in the absence of the defects, the accident would not have occurred. *Id.* at 769. The defendant appealed, arguing that the expert's testimony

regarding causation went beyond his expert report. *Id.* The Eighth Circuit denied the defendant's appeal, ruling that the expanded testimony was permitted because it was simply a logical inference based on the information that had been disclosed in the expert report, and, accordingly, the defendant faced no unfair surprise. *Id.* at 770. *See also Dunafon v. Delaware McDonald Corp.*, 691 F. Supp. 1232, 1235 (W.D. Mo. 1988) (expert could testify based on updated figures where the updated figures did not change his previous opinions). In *Shuck v. CNH Am., LLC*, the Eighth Circuit held that a district court did not err in allowing an expert to testify beyond the scope of his expert report, where the expansion in testimony was limited and closely related to the opinions previously disclosed. 498 F.3d 868, 876 (8th Cir. 2007).[3]

Like in *Thudium*, even if Kroon's "updated damages calculations" had not previously been disclosed as part of his August 1, 2014, expert report (which they were), the "updated damages calculations" are simply a logical extension of the Kroon's prior opinion as to the amount of unpaid hours worked that he had previously disclosed and which remains unchanged. The fundamental basis for these calculations was fully disclosed as part of Kroon's August 2014 expert report, and Defendants spent a significant portion of their deposition of Kroon delving into Kroon's methodologies in calculating the unpaid hours worked.   Indeed, in their *Daubert* filings, Defendants argued that the hours calculated by Kroon were incorrect (mostly because Defendants contended that their own time records were incorrect). Those criticisms, which Defendants have been planning on addressing with the jury, have not changed, because Kroon

---

[3] *Shuck* and *Thudium* also provide a basis for distinguishing the instant motion from the Court's prior ruling precluding the use of Kroon's supplemental affidavit. In that affidavit, Kroon had testified to additional **calculations he had performed** to determine what the effect would be of including Defendants' drop-off and pick-up records in his analysis. In that affidavit, Kroon performed new calculations to express an opinion as to an argument about the data that had been made by Defendants, and the Court found that this new opinion was untimely as it had not been disclosed before the expert discovery deadline.

Here, Kroon did not perform any new data analysis, he merely repeated a simple arithmetic calculation he had already performed and disclosed as part of his initial expert report.

has not, in a single instance, changed the number of compensable hours claimed by a single employee during a single workweek. Multiplying that number by the applicable minimum wage does not somehow change the content or character of his report or require Defendants to pursue new avenues of attack.

Defendants will not be able to attack Kroon for multiplying the amount of unpaid hours worked by the minimum wage that was in effect on the date the hours were worked; the only portion of that calculation which is subject to attack and argument is Kroon's calculation of the amount of unpaid-hours-worked. Accordingly, to allow Kroon to present a new – and simpler calculation – of damages that is based on the same underlying data analysis neither prejudices nor surprises.

Moreover, Kroon has not changed any of his opinions with respect to the new spreadsheet. Defendants have attacked Kroon at length in *Daubert* specifically because Kroon, as a data analyst, did not opine on the legal merits or methodologies for computing damages. Instead his technical expertise was utilized to allow testimony related to the number of hours each class member spent in each compensable activitiy. Yet as Kroon always acknowledged, the correct damange methodology was a legal issue for the Court to determine. During deposition, Kroon acknowledged that he could not opine as to whether the *Klinghoffer* calculations he had performed were the proper way to measure damages. (Kroon Dep. Vol I. at pp. 21, 27).

Kroon further explicitly stated in his report that he intended to apply any damage formula ultimately ordered by the Court, including an hour-by-hour rule, if so ordered. Kroon, August 1, 2014, Report, at 9, ECF Doc. No. 304-3. Thus, the 2015 spreadsheet contains no surprises or new expert analysis.

Furthermore, courts routinely allow damage calculations to be updated to face new realities or new assumptions, as long as the underlying documents and methodologies used were previously disclosed. For instance, in *Structural Polymer Group, Ltd. v. Zoltek Corp.*, the Eighth Circuit permitted modification of a damages calculation where the documents upon which both the old and new damages were calculated were available to the opposing party throughout the litigation and the only modifications to the calculation involving a change to one of the basic assumptions. 543 F.3d 987, 999 (8th Cir. Mo. 2008). *See also Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 344 (8th Cir. 1979) (updated damages calculation permitted because it did not prejudice defendant); *ZF Meritor, LLC v. Eaton Corp*., 696 F.3d 254, 298-300 (3d Cir. 2012) (updated damage calculations permitted where based on same data and methodologies as previous damage calculations); *McHugh v. Olympia Entm't, Inc.*, 37 Fed. Appx. 730, 735 (6th Cir. Mich. 2002) (allowing revised expert testimony in light of developments in the case); *cf. Apple, Inc. v. Samsung Elecs. Co*., 2013 U.S. Dist. LEXIS 161293, *25-26 (N.D. Cal. Nov. 9, 2013) (permitting recalculation of damages based on a liability determination that determined new dates for damages to begin, but denying leave to recalculate damages based on a *new theory* as to when damages began to accrue not previously disclosed).

In *Acosta v. Tyson Foods*, the District Court allowed the plaintiffs' expert to recalculate damages *after trial* based on certain objections that the defendants had raised. The court allowed that recalculation, at least in part because the expert had testified extensively with respect to her ability to revise her calculations with different variables from the underlying payroll data. *Acosta v. Tyson Foods, Inc*., 2013 U.S. Dist. LEXIS 101712, *3 (D. Neb. July 12, 2013). The court further noted that "**<u>Any contention of unfair surprise by Tyson is disingenuous. It was</u>**

**clearly contemplated by the parties and the court that backpay damages could be recalculated in accordance with the court's findings."** *Id.*

Where courts have not permitted the supplementation or recalculation of a damages calculation made by an expert, it is not because the expert performed new arithmetic to previously disclosed figures but rather because the party was attempting to substitute an entirely new theory of damages that had never been disclosed before, typically after their initial theory of damages had been dismissed. For instance, in *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 515 (Fed. Cir. 2012), the plaintiffs' damages theory had been excluded by the court and the plaintiffs, in an attempt to salvage their case, attempted to substitute a wholly new damages theory on the eve of trial. The Federal Circuit upheld the district court's denial of that effort. *Id.* Similarly, in *Arabian Agric. Servs. v. Chief Indus.*, the Eighth Circuit upheld the district court's rejection of a plaintiff's attempt to substitute an entirely new damages theory on the eve of trial after their initial damages theory had been excluded. 309 F.3d 479, 483 (8th Cir. 2002). In *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.,* 2009 U.S. Dist. LEXIS 101920, *20-21 (D.N.M. Sept. 24, 2009), the court excluded a supplemental expert report that attempted three weeks before the beginning of trial to assert an entirely new theory of damages. *ePlus, Arabian Agric. Servs.,* and *Guidance* are all distinguishable from the instant case because Defendants do not dispute that Plaintiffs disclosed their **theory** of entitlement to hour-by-hour damages in Kroon's timely August 1, 2014, expert report.[4]

---

[4] Of course, these cases are also distinguishable because, as outlined above, Kroon also provided the **method** of computing the hour-by-hour damages and the computer code and files that he had used to compute such damages as part of his August 1, 2014, expert report.

Defendants are essentially arguing that because Plaintiffs only provided the method, computer code, and files that Kroon used to compute hour-by-hour damages, but did not provide an Excel spreadsheet listing those computations, Plaintiffs did not disclose their damages methodology or their computations of damages. Even if Defendants are right that an Excel spreadsheet should have been provided earlier, the cases cited by Defendant in which a plaintiff

Despite Defendants' attempt to distinguish the Eighth Circuit's decision in *Structural Polymer* by arguing that the modifications to the damages calculation in that case was simple and minor, the case is directly on point for just that reason. Plaintiffs are not advancing a radically new theory of damages that requires Defendants to retain a new expert, re-depose Kroon, or readjust their trial strategy. Here, both the documents on which the hour-by-hour damage calculations are based, the methodology of how the hour-by-hour damages are calculated, and the actual SQL code used to calculate such damages, were **all** disclosed to Defendant as part of Plaintiff's August 2014 expert report. The only item not provided to Defendants was an Excel spreadsheet that listed the actual results of those computations, but change in the damage calculation is a simple one based on the legal holdings as to *how* damages should be calculated.

Specifically, under the federal *Klinghoffer* standard for calculating wage and hour damages, Kroon still had to calculate the amount of unpaid hours worked per week. As explained in detail above, Kroon then multiplied that amount by the applicable minimum wage to get the hour-by-hour damages for each class member for each week in which they worked. He then performed the *Klinghoffer* calculation by multiplying the total number of hours worked by the minimum wage and comparing that number with the amount of money actually paid per week, and then compares the *Klinghoffer* calculation with the hour-by-hour calculation to determine the weekly *Klinghoffer* damages that exclude Defendants' 3 and 4 time violations. In order to calculate the hour-by-hour damages, Kroon simply leaves out the last two steps. Accordingly, Kroon's methodology of data analysis has not changed – it is simply that the hour-by-hour calculation is simpler and does not require an analysis of each class member's total weekly pay or Line 3/4 time.

---

attempted to present an entirely new theory of damages that had never been disclosed before trial are clearly inapposite.

Accordingly, because the updated calculation of damages on an hour-by-hour basis is within the scope and uses the same data and methodologies as Kroon's calculation of damages on a workweek basis under *Klinghoffer*, even if the Court were to find that the new hour-by-hour damages calculation contained in the 2015 Spreadsheet constitutes expert testimony and even if this Court found same was not previously explicitly disclosed, the Court should still permit it because it falls within the scope of Kroon's 2014 expert report, it uses the same methodologies as were disclosed in Kroon's 2014 expert report, and Defendant is not prejudiced or surprised by the updated damages figure. Accordingly, Defendants' motion should be denied for this reason as well.

### F. THE 2015 SPREADSHEET IS NOT EXCLUDABLE UNDER RULE 26(a)(1)(A)(iii) BECAUSE THE CONTENTS OF THE SPREADSHEET WERE PREVIOUSLY DISCLOSED, THEREFORE SUBSTANTIALLY COMPLYING WITH THE DAMAGE DISCLOSURE REQUIREMENTS OF RULE 26

Defendants also argue that Plaintiff should be precluded from introducing their hour-by-hour damages calculation because same was not explicitly provided to Defendants as part of Plaintiffs' Initial Disclosures pursuant to Rule 26(a)(1)(A)(iii). This argument fails as well because explicit disclosure is not necessary when the information to be disclosed is nevertheless made available to the other party during the course of discovery. Fed. R. Civ. P. 26(e). Here, because Defendants were made fully aware of the computations that would be used to calculate the class members' hour-by-hour damages, Plaintiffs did not have to separately identify their damage calculation in a formal Rule 26 disclosure.

Rule 26(a)(1)(A)(iii) requires a party to disclose at the outset of litigation without awaiting a discovery request a computation of each category of damages claimed by the disclosing party. If a party is not aware of information that pertains to such disclosure at the outset of discovery, the party has a duty under Rule 26(e) to supplement or correct its disclosure

**"if the additional or corrective information has not been otherwise made known to the other parties during the discovery or in writing."** Fed. R. Civ. P. 26(e). *See, e.g. Tomlinson v. J.B. Hunt Transp., Inc.,* 989 F. Supp. 2d 766, 776 (D. Minn. 2013) (holding that witness did not need to be disclosed where he was identified as having relevant knowledge in response to plaintiff's interrogatories); *Am. Home Assur. Co. v. Greater Omaha Packing Co*., 2014 U.S. Dist. LEXIS 23026, *8 (D. Neb. Feb. 24, 2014) (Strom, J.) (holding that witnesses that had not been disclosed but were known to plaintiff could be called at trial because they did not need to be disclosed under Rule 26(e)).

Here, as noted above, Plaintiffs' hour-by-hour damages computation involves two components: (1) the number of unpaid hours claimed per week per class member; and (2) the minimum wage rate that was in effect on the week in question. Plaintiffs disclosed that they were seeking Nebraska wage and hour damages be calculated on an hour-by-hour basis in Richard Kroon's August 1, 2014 expert report. Following the report, Defendants filed a rebuttal expert report and deposed Kroon. Moreover, as described above, Plaintiffs provided the number of unpaid hours claimed per week per class member as part of Kroon's August 1, 2014, expert report and provided the week in which such hours were worked.

Moreover, during Kroon's deposition, Defendants' counsel cross-examined him extensively as to how the number of unpaid hours claimed per week per class member had been derived.

Accordingly, any argument that Defendants were not made aware of the amount of unpaid hours being claimed on an hour-by-hour basis is completely disingenuous. Given that, Plaintiffs did not have to submit a separate Rule 26(e) supplement of their damages calculation for hour-by-hour damages, because the information had clearly been made known to Defendants.

29

**G.  EVEN  IF  PLAINTIFFS  FAILED  TO  DISCLOSE  THE  DAMAGE COMPUTATION OF HOUR-BY-HOUR DAMAGES, THE COURT SHOULD STILL ALLOW PLAINTIFFS TO PRESENT THOSE DAMAGES TO THE JURY.**

However, even if the Court were to rule that Plaintiffs failed to adequately disclose pursuant to Rule 26(a)(1) or Rule 26(e) their damages computation for hour-by-hour damages in Richard Kroon's August 2014 expert report and during his deposition, the Court should still not preclude Plaintiffs from offering these computations at trial because the failure is both substantially justified and harmless.

If a party fails to disclose the information as required by Rule 26, the Court **may** preclude the party from the using that information at trial unless the failure to disclose was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). "When fashioning a remedy, the district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). However, the district court's discretion narrows as the severity of the sanction or remedy it elects increases. *Id.*; *see also Heartland Bank v. Heartland Home Fin., Inc.,* 335 F.3d 810, 817 (8th Cir. 2003) (where exclusion of evidence was tantamount to dismissal of claims, the district court should have considered lesser sanctions); *Laclede Gas Co. v. G.W. Warnecke Corp.,* 604 F.2d 561, 565-66 (8th Cir. 1979) (drastic sanctions, such as dismissal, require a finding of willfulness, bad faith, or fault on the part of the noncompliant party).

With respect to the first *Wegener* factor, Plaintiffs' reason for non-compliance, Plaintiffs dispute that they failed to disclose their hour-by-hour damages. In fact, the August 2015 spreadsheet was not meant to be a Rule 26(a)(1)(A)(iii) damages disclosure, because Plaintiffs

were confident that they had already sufficiently disclosed their damages calculations. The August 2015 spreadsheet was provided to Defendant as the foundation for Richard Kroon's summation testimony as to the final hour-by-hour calculations consistent with this Court's ruling. (*See* Email from Justin Swidler, Esq., to Joseph Jones, Esq., Swidler Cert. Ex. 1-K). Given that the results are derived from simply applying the Court's ruling to the facts and opinions already disclosed by Kroon (i.e., the number of hours worked), even if the Court finds that Plaintiffs should have disclosed the information in an Excel Spreadsheet earlier, Plaintiffs were justified in thinking that they did not need to do so. Accordingly, this factor weighs in favor of not excluding the damages calculations.

With respect to the second *Wegener* factor, the surprise and prejudice faced by the opposing party, as described above, Defendants had all of the information they needed to make these final hour-by-hour calculations since Kroon provided his expert report and data in August 2014. Furthermore, Defendants correctly identified that the total number of unpaid hours claimed to have been worked was the material figure that Kroon had calculated, and proceeded to cross-examine him extensively during his deposition on this topic. Defendants further used Topel to criticize Kroon's use of an hour-by-hour damage calculation as resulting in **"drastically [overstated] damages."** *See* Topel Expert Report, ECF Doc. No. 308-2.

Defendants claim inexplicably that it would be virtually impossible for them to identify the changes between the August 2015 and August 2015 spreadsheets or determine if there were errors in the August 2015 spreadsheet, and that it would take hundreds of man-hours or months to adequately analyze the spreadsheet. To make such an argument, Defendants have turned a **computer-readable, searchable, and manipulable** spreadsheet into a printout of 14,000 pages.

By doing so, they have made the analysis and comparison all but impossible, which is clearly the reason they have decided to provide the spreadsheet in non-native print form to this Court.[5]

Accordingly, Defendants' claims of prejudice – even if they were receiving this information for the first time – are greatly exaggerated and wholly unconnected with the actual data at issue. Moreover, because Defendants have been aware of the material computations of hour-by-hour damages since August 2014 and cross-examined Kroon extensively on this issue, Defendants face no prejudice stemming from the introduction and use of the August 2015 spreadsheet and final hour-by-hour calculations. In *Davis v. U.S. Bancorp*, the Eighth Circuit has held that in the absence of unfair surprise, evidence should be permitted even if it was not disclosed pursuant to Rule 26. 383 F.3d 761, 765 (8th Cir. Minn. 2004).

With respect to the third factor, the importance of the evidence, its importance cannot be overstated. This Court held on August 3, 2015, that the 50,000+ class members' Nebraska minimum wage violations should be calculated on an hour-by-hour basis. That decisions means that class members are legally entitled to nearly double the damages than if the damages were to be calculated under the federal *Klinghoffer* rule. Defendants **admit** that if the Court grants Defendants' motion, the class members will only be able to recover their *Klinghoffer* damages. "**Plaintiffs will still be able to offer evidence of the weekly damage totals**." *See* Defendant's Brief at 11. This, right there, is the sole purpose of Defendants' motion; to claim exaggerated prejudice so that Werner will be able to receive a windfall of nearly **$20,000,000**, money that the 50,000 class members are legally entitled to. Even if Defendants estimate of the amount of time they would need to address the new damages (100s of hours) is accurate, the cost of those extra

---

[5] Defendants have suggested that they chose to print out the spreadsheet because at 50 MB in size, the file was too large to submit via the court's electronic filing system. However, that Defendants chose to send the Court a print version of the spreadsheet instead of simply placing the spreadsheet on a CD-ROM (capable of holding 100s of MBs) demonstrates that Defendants were more interested in engaging in theatrics than analysis.

100s of hours of attorneys time is **<u>dwarfed</u>** by the amount of unpaid wages Werner will retain if Defendants successfully preclude Plaintiffs from seeking these damages. As the Third Circuit held in *Z.F. Meritor*, exclusion of critical evidence is an extreme sanction. 696 F.3d at 297. Similarly, in *Gillum v. United States*, the Tenth Circuit held that exclusion of expert testimony was too harsh a sanction where the result was judgment in favor of the opposing party. 309 Fed. Appx. 267, 270 (10th Cir. 2009). Here, if the Court were to grant Defendants' motion, Plaintiffs would be precluded from receiving their hour-by-damages damages, a difference of nearly $20,000,000. Such an extreme sanction is wholly unwarranted given the notice Defendants had that Plaintiffs were seeking hour-by-hour damages, the computations of unpaid hours worked per week that Plaintiffs disclosed more than a year ago before the discovery deadline, and the information contained in Kroon's expert report that detailed how the hour-by-hour damages would be calculated. Accordingly, the third *Wegener* factor strongly supports allowing Plaintiffs to present their evidence of hour-by-hour damages.

The fourth *Wegener* factor to be considered is whether a continuance is available to alleviate the prejudice. Because Defendants were aware of the material computations involved in the hour-by-hour damages calculations as of August 2014, and because Defendants already cross-examined Kroon during his deposition as to how he reached those figures, a continuance is not necessary to allow Defendants to prepare for trial. However, that Defendants do not ask for a continuance – even in the alternative – demonstrates that Defendants are seeking this relief **<u>not</u>** because they actually need additional time to respond to the hour-by-hour damages calculation but rather because they wish to use a discovery sanction to achieve what they did not achieve at summary judgment – namely, having their damages be calculated on a weekly basis such that they are able to retain tens of millions of dollars that Defendants otherwise owe the class

members. Courts look warily at parties who claim surprise and prejudice but do not seek a continuance to cure the alleged prejudice they claim to suffer. *Johnson v. H. K. Webster, Inc.*, 775 F.2d 1, 8 (1st Cir. N.H. 1985) (*citing to Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 344 (8th Cir. 1979)). In *Phil Crowley Steel Corp. v. Macomber, Inc.*, the 8th Circuit affirmed the district court's denial of a motion to strike a new damages calculation presented to the moving party four days before trial where the moving party did not seek a continuance, but only sought to strike the evidence. 601 F.2d 342, 344 (8th Cir. 1979).

Defendants' failure to seek a continuance here is even more disingenuous considering that Defendants **have** sought a continuance in their motion seeking certification of the Court's summary judgment motion for purposes of interlocutory appeal, and have admitted that if the Court grants that motion, that grant would moot the instant motion.

Because Defendants have not sought a continuance, the Court should not grant one. As set forth above, Defendants have been well aware of all material facts and calculations related to Plaintiffs' hour-by-hour damages since August 2014, and cross-examined Kroon extensively about these issues in their depositions of him.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that Defendants' motion be denied.

Respectfully submitted,

*/s Justin L. Swidler*
Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Hwy N. Ste. 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420

August 17, 2015