IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PHILIP PETRONE, | ) | CIVIL ACTION:  8:11-cv-00401 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| WERNER ENTERPRISES, INC. d/b/a | ) | |
| WERNER TRUCKING and DRIVERS | ) | |
| MANAGEMENT, LLC, | ) | |
| | ) | **REPLY BRIEF IN SUPPORT OF** |
| Defendants. | ) | **DEFENDANTS' MOTION TO EXCLUDE** |
| | ) | **AND/OR STRIKE PLAINTIFFS' NEWLY** |
| ―――――――――――――――― | ) | **DISCLOSED DAMAGE CALCULATIONS** |
| | ) | **AND REQUEST FOR EXPEDITED BRIEFING** |
| PHILIP PETRONE, et al., | ) | **SCHEDULE** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CIVIL ACTION:  8:12-cv-00307 |
| WERNER ENTERPRISES, INC. d/b/a | ) | |
| WERNER TRUCKING and DRIVERS | ) | |
| MANAGEMENT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.    INTRODUCTION

Plaintiffs claim their August 1, 2014 disclosure, showing total damages of $28 million, was actually a disclosure showing total damages of over $45 million. Plaintiffs state that Werner should have or could have figured out that $28 million in damages calculated on a weekly basis was equal to $45 million in damages calculated on an hourly basis. Plaintiffs' implausible statements are contradicted by Plaintiffs' expert. Kroon stated specifically in his August 1, 2014 report that he did not disclose the hourly damage totals in that report. Plaintiffs ignore that statement. Instead, Plaintiffs claim the hourly damage totals were "inherent" in what was timely

produced and could be found in Kroon's "SQL code." Plaintiffs also misrepresent statements made by Werner's expert.

Plaintiffs also claim Kroon openly explained in his August 1, 2014 report that he computed damages pursuant to two separate formulas and so Werner has always been on notice of Kroon's hourly damage calculations. The reference to two formulas in Kroon's August 1, 2014 report, and Topel's comments about those formulas, do not have anything to do with computing hourly damages This is because Plaintiffs did not disclose any hourly damage calculations or totals until August 5, 2015, over one year past their expert deadline and one month before trial. To date, ***Plaintiffs still have not produced any explanation from Kroon regarding how he calculated hourly damage totals***. Plaintiffs also have not produced any authority, in the form of case law or testimony from any expert, that the method Kroon allegedly used to compute hourly damages is an appropriate method. Instead, in Plaintiffs' brief, counsel outlines his apparent understanding of how Kroon computed the latest round of damages. Arguments of counsel are not evidence. <u>Lingar v. Bowersox</u>, 176 F.3d 453, 460 (8th Cir. 1999).

Werner will be incurably prejudiced if Plaintiffs are allowed to proceed to trial on September 9, 2015, using new damage calculations first produced on August 5, 2015 and which Plaintiffs admit "nearly double" Plaintiffs' damages. Werner will not have the chance to depose Kroon about this new theory of hourly damages. The time and effort required to review and analyze Kroon's new calculations and prepare for a trial on those new calculations is described in the affidavit of Joseph E. Jones filed with Defendants' Submission of Fees and Costs Pursuant to the Court's July 7, 2014 Order, describing the efforts taken by Werner's expert and its counsel to prepare for Kroon's first deposition. (Filing 278-2, Affidavit of Joseph E. Jones in Support of Defendants' Submission of Fees and Expenses Pursuant to Court's July 7, 2014 Order). It would

be a prejudicial abuse of discretion to allow Plaintiffs to proceed to trial using Kroon's latest round of damage calculations. Kroon admits he had that information in August, 2014, but Plaintiffs waited until now to disclose that information. Werner's counsel cannot prepare exhibits for trial or develop an adequate cross-examination of Kroon without reviewing and analyzing individual drivers' calculations. That task is made considerably more difficult by Plaintiffs' eleventh-hour disclosure of a 14,000+ page spreadsheet setting forth new damage calculations for each of the over 55,000 drivers in the class. Plaintiffs accuse Werner of engaging theatrics by submitting a hard copy of that spreadsheet for the Court's review. In reality, Werner printed out Kroon's 14,000+ page spreadsheet because that is how Werner's counsel has analyzed all of Kroon's spreadsheets in this lawsuit.

Werner requests that Plaintiffs' August 5, 2015 damage totals be stricken as not timely disclosed. In the alternative, if the Court is inclined to allow Plaintiffs to proceed to trial using that newly-disclosed evidence, Werner requests a continuance of the trial so that Werner's counsel may re-depose Kroon, Werner's expert may examine the newest round of damage totals, and Werner may adequately prepare for a trial on damages. When this Court ordered on August 3, 2015, that damages for Plaintiffs' state law claims could be computed on an hourly basis, the Court likely assumed that Plaintiffs timely produced hourly damage calculations and totals. They did not. As of this moment, Plaintiffs still have not produced the calculations underlying Kroon's latest damage totals. Plaintiffs have only disclosed Kroon's new damage totals, which nearly double Plaintiffs' damages. Werner will be incurably prejudiced, and it would be an abuse of discretion, to force Werner to go forward with trial on September 9, 2015, if Plaintiffs are allowed to use the new damage totals.

## II.    ARGUMENT

### A.    Plaintiffs did not timely disclose Kroon's hourly damage totals.

Plaintiffs repeatedly talk out of both sides of their mouth. On the one hand, Plaintiffs claim that all information contained in Kroon's August 5, 2015 spreadsheet was timely disclosed to Werner when Plaintiffs produced Kroon's August 1, 2014 damage calculations and expert report. (See, e.g., Plaintiffs' Brief, p. 6-10). Plaintiffs argue those calculations were "inherent" in what Plaintiffs timely produced, it is a matter of "simple arithmetic" to compute the newest damage totals from the information already disclosed, and Kroon's hourly damage calculations could be found in the "computer code" produced in August, 2014. (Plaintiffs' Brief, p. 1-3). However, Plaintiffs also concede the August 5, 2015 spreadsheet "almost doubles" the timely-disclosed damages and contains additional information - namely, Kroon's hourly damage totals for each class member. (See, e.g., Plaintiffs' Brief, p. 3-4, 13, 32). Plaintiffs do not cite any affidavit or other testimony from Kroon, confirming counsel's unsupported statements that all of the information contained in the latest disclosure was already produced to Werner in August, 2014. That is because Kroon stated in his August, 2014 report he was not producing his hourly damage calculations. (Filing 351-1, Affidavit of Elizabeth Culhane ("Culhane Aff.") at Ex. C, p. 9). Plaintiffs' argument also defies logic: if all the information contained in the new spreadsheets was contained in Kroon's August 1, 2014 damage calculations, Plaintiffs would not have had any reason to disclose a new spreadsheet on August 5, 2015.

There is no dispute that Kroon's August 1, 2014 report disclosed total damages of $28,219,279.00, computed on a weekly basis. (Filing 351-1, Culhane Aff., ¶7 & Ex. C, pp. 8-9). Kroon's August 5, 2015 spreadsheet computes total damages of $45,594,600.00, computed on an hourly basis. (Id. at ¶8 & Exhibit D). The two disclosures (August, 2014 and August, 2015) are extremely different. Even if Kroon's latest damage calculations were contained in Kroon's

computer code (a claim that is not supported by any actual evidence), burying damage calculations in computer code is not a proper method for disclosing an expert's opinions. See, e.g., Guidance Endodontics, LLC v. Dentsply International, Inc., Case No. CIV-8-1101, 2009 WL 3672373, *8 (D. N.M. 2009) (concluding an expert did not timely disclose an opinion regarding a particular category of damages, where his report made "passing reference" to that category of damages but he did not set forth any methodology or calculations regarding that category of damages in his report). Here, Kroon stated in his August 1, 2014 report that he was not disclosing his hourly damage calculations. (Filing 351-1, Culhane Aff. at Ex. C, p. 9).

Because Plaintiffs have no justification for failing to timely disclose Kroon's hourly damage totals, Plaintiffs resort to misleading the Court and misquoting Werner's expert. Plaintiffs claim Kroon openly explained in his August 1, 2014 report that he computed damages pursuant to two separate formulas and so Werner has always been on notice of Kroon's hourly damage calculations. (Plaintiffs' Brief, p. 17-21). The reference to two formulas in Kroon's August 1, 2014 report does not have anything to do with computing hourly damages (which is likely why Plaintiffs' counsel could not get an affidavit from Kroon to support Plaintiffs' unsupported arguments to the contrary). In his August 1, 2014 report, Kroon explained that he calculated each driver's damages using two separate formulas, and then took whichever result was lower, to "**ensure that damages calculated are not attributable to time logged on Lines 3 and 4**." (Filing 351-1, Culhane Aff., at Exhibit C, p. 7) (emphasis added). Similarly, Kroon testified "[w]e're using -- the theory uses two formulas. **The formulas are used so we make sure we're not using any 3 [or] 4 time in the ultimate damage calculations**." (Filing 304-4, 2nd Kroon Depo. p. 418:1-4) (emphasis added). Kroon did not use two formulas for the purpose of computing one hourly damage total and one weekly damage total. Kroon explained that the

point of the two formulas was to "ensure" he excluded all on-duty time from his damage calculations and only computed damages for time on Lines 1 and 2. (See id.). Later in his August 1, 2014 report, Kroon explicitly stated that he was not disclosing any hourly damage calculations, stating:

> **I understand Plaintiffs are also seeking liability where minimum wage is calculated on an hourly basis** (rather than a weekly basis) … **I am able to perform such calculations** (*and in fact have already done so* as such math is inherent in the calculations I performed above) **should the Court determine liability under such a basis."**

(Filing 351-1, Culhane Aff. Ex. C, p. 9) (emphasis added). Plaintiffs completely ignore that statement.

Plaintiffs also falsely claim Werner's expert, Dr. Robert Topel, recognized that Kroon calculated hourly damages for each driver and commented on it. (Plaintiffs' Brief, p. 19-20). Plaintiffs grossly misstate Dr. Topel's report. Dr. Topel's report does not even contain the phase "hourly damages." (See generally Filing 308-2, December 5, 2013 Report by Dr. Robert Topel). The quoted portion of Dr. Topel's report commented on Kroon's use of two formulas to ensure that Plaintiffs' damages did not include time spent on Lines 3 and 4. (See id. at p. 17). Kroon suggested in his August 1, 2014 report that he followed a conservative approach by running two formulas and then utilizing whichever one resulted in a lower damage total. (Filing 351-1, Culhane Aff., at Exhibit C, pp. 6-7). In the portion of his report cited by Plaintiffs, Dr. Topel simply explained that Kroon was not using a conservative approach by choosing the formula that produced the lesser amount of damages, stating:

> Mr. Kroon claims to use two separate formulas to calculate damages and then relies on whichever calculation produces the lower dollar amount. While he does do this, he implies that this is a conservative approach when in actuality it would be incorrect to use the calculation that resulted in the higher amount under Plaintiffs' theory of damages. By using whatever calculation results in the lower dollar amount, Kroon is allowing for amounts paid above the minimum wage to

6

offset any potential damages which Plaintiffs claim are owed for off-duty damages. For example, if a driver was paid $362.50 for 40 hours of work, but Plaintiffs claim that the driver actually should have been paid for 10 hours of sleeper berth time, damages would be $0 under Plaintiffs' theory since the driver was paid the minimum wage of $7.25 per hour for 50 hours ($362.50 divided by $7.25 equals 50). Under the two separate formulas used by Kroon he would calculate damages of $0 and $72.50 and then he takes the lower dollar amount of $0. This is not a conservative approach. If Kroon took the larger damage amount he would drastically overstate damages, even under Plaintiffs' theory.

(Filing 308-2, December 5, 2014 Report by Dr. Robert Topel, p. 17).

The point of Dr. Topel's statement was that Kroon's suggestion he could have used either damage total was misleading because had Kroon used the higher total, he would have drastically overstated Plaintiffs' damages. Kroon admitted to that during his own deposition, stating:

Q.    If you had used the higher amount, that would have been incorrect?
A.    Only the higher amount, yes.
Q.    That's what I am asking, if you had used the higher amount, it would have been incorrect.
A.    Yes.
Q.    You didn't use the lower amount out of the goodness of your heart. You did it because you thought that was the correct amount to use?
A.    Yes.

(Filing 304-4, 2nd Kroon Depo. p. 418:16-25). Neither Werner nor its expert had any idea from Kroon's August 1, 2014 report, computing total damages of $28,000,000 on a weekly basis, that Plaintiffs would later claim they are actually entitled to over $45,000,000 in damages computed on an hourly basis.

After repeatedly arguing they did timely disclose hourly damage calculations, Plaintiffs also claim they were not required to disclose hourly damage calculations by any specific date. (Plaintiffs' Brief, p. 5, 13). First, Plaintiffs assert without support that a party is only required to disclose a computation of damages with its initial disclosures "where feasible." (Plaintiffs' Brief, p. 5). Plaintiffs do not cite any authority for that argument and it is contradicted by the express language of Fed. R. Civ. P. 26(a). The rule states that "a party **must**, without awaiting a

7

discovery request, provide the other parties … a computation of each category of damages claimed." Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added). Plaintiffs cannot satisfy their burden to show good cause for a late disclosure by misquoting the Federal Rules. Plaintiffs also claim there is no deadline for supplementing Rule 26 disclosures pursuant to Fed. R. Civ. P. 26(e)). (Plaintiffs' Brief, p. 5). However, the Court's progression order states that any supplementation of expert disclosures must be made by the expert deadlines set forth in the progression order. (Filing 295, 2nd Amended Final Progression Order, ¶3). The Federal Rules also state that a party must disclose a copy of all documents which that party may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(ii). Non-expert discovery in this case closed on April 1, 2014, so any non-expert disclosures -- i.e., documents supporting Plaintiffs' claims -- had to be made on or before that date. (Filing 295, 2nd Amended Final Progression Order, ¶1).

Plaintiffs also claim there was no additional expert opinion to disclose because Kroon will simply provide "summation" testimony about the "simple arithmetic" that has increased Plaintiffs' damages from $28,000,000 to over $45,000,000. (Plaintiffs' Brief, p. 3 & 13). As an initial matter, it is unreasonable to produce a 14,000+ page summary for the first time only one month before trial. Moreover, fact discovery closed on April 1, 2014. (2nd Amended Final Progression Order, ¶1). The only disclosures permitted after that date are expert disclosures. (Filing 294, Stipulated Progression Order, ¶3; Filing 295, 2nd Amended Final Progression Order, ¶1 & ¶3). Accordingly, if the latest damage computations are not expert opinions, those computations should have been disclosed on or before April 1, 2014. See Fed. R. Civ. P. 26(a)(1)(A)(ii). Kroon also has not ever been disclosed as a summary witness. Kroon was first disclosed on the date for identifying expert witnesses and he is listed as a "data analyst expert" on Plaintiffs' witness list. (Filing 186, Notice of Disclosure of Expert Witnesses; Filing 206,

Plaintiffs' Witness List). <u>See, e.g., Auto Industries Supplier Employee Stock Ownership Plan v. Snapp Systems, Inc.</u>, Case No. 03-73457, 2008 WL 5383372 *5 (E.D. Mich. Dec. 23, 2008) (individual originally identified as expert could not later be re-designated as a summary witness where it was not clear what portions of his testimony would be summary and which portions would be expert opinions).

Most of the cases cited by Plaintiffs in support of their assertion that any lay witness could testify to the "simple arithmetic" that increased Plaintiffs' damages from $27,000,000 to $45,000,000 do not even involve the admissibility of damages evidence. <u>See, e.g., Bryant v. Farmers Ins.</u>, 432 F.3d 1114, 1121, 1124 (10th Cir. 2005) (concluding, in an employment discrimination case, that the plaintiff could testify as to her analysis of average performance review ratings for other departments of her employer, to refute the employer's theory that she was fired for bad performance); <u>United States v. Hamaker</u>, 455 F.3d 1316, 1331-1332 (11th Cir. 2006) (in a bank fraud and conspiracy case, concluding an FBI agent could testify as a lay witness, based on his review of financial records, that the defendant charged one party for work done for another); <u>United States v. Powers</u>, 578 F. Appx. 763, 766 (10th Cir. 2014) (concluding, in a wire fraud case relating to fraudulent mortgage loans, that a lay witness lender could testify regarding debt-to-income ratios to prove the loans would not have been approved but for fraudulent information); <u>United States v. Madison</u>, 226 F. App'x 535, 544 (6th Cir. 2007) (concluding, in a tax evasion case, that an FBI analyst could testify as a lay witness that, based on his review the defendant's bank accounts and those of the victim, the defendant would not have been able to afford certain purchases without using illicit funds); <u>Chao v. Tyson Foods</u>, 568 F.Supp.2d 1300, 1324-26 (N.D. Ala. 2008) (concluding, in an FLSA case, that systems analyst could review electronic time records and estimate or infer as a lay witness regarding the number

of employees who clocked out and back in during a given time period). In the only case cited by Plaintiffs that does appear to reference evidence of damages, there was no issue of late disclosure by an expert and the court concluded any error in admitting the lay testimony was harmless because that testimony did not affect the jury's calculation of damages. Pacific Enters. v. Federal Ins. Co., 189 F. App'x 591, 592 (9th Cir. 2006).

Plaintiffs also grossly overstate the holding in Pryor v. Aerotek Scientific, LLC. In that putative class action, the plaintiffs' lawyer averaged 821 computerized employee time records to prove that liability for certain pre-shift work claims could be proven on a common basis. 278 F.R.D. 516, 534-36 (C.D. Ca. 2011). Although Plaintiffs suggest the court found that evidence appropriate and admissible, the court actually noted the calculations were "**fraught with problems**" and "*even if one were to accept [the] calculations as accurate,*" the calculations did not establish that liability could be proven through common evidence. Id. at 534-535 (emphasis added). It also appears the district court was provided with the computations and data underlying the lawyer's analysis. See id. Here, Werner has no way to determine whether Kroon's new damage totals are fraught with problems because **Plaintiffs still have not disclosed any report or underlying calculations by Kroon relating to those new damage totals.**

Plaintiffs' August 5, 2015 damage disclosure should be excluded because (1) Plaintiffs did not timely disclose Kroon's hourly damage totals (*and still have not produced Kroon's hourly damage calculations*); (2) there is no justification for Plaintiffs' failure to do so; and (3) Werner will be irreversibly prejudiced if Plaintiffs are allowed to use the new damage totals.

### B.    There is no evidence of how Kroon calculated the new hourly damage totals.

Plaintiffs also argue, without authority, that Kroon's latest round of damage calculations is admissible because Kroon has "now done" the necessary work to compute hourly damages

pursuant to the Court's summary judgment order. (Plaintiffs' Brief p. 3). Plaintiffs claim Kroon's latest damage totals reflect nothing more than "simple arithmetic" and then try to explain Kroon's calculations in over 5 pages of their brief. (Plaintiffs' Brief, p. 3, 7-13). What is noticeably absent from Plaintiffs' response is an affidavit or other information ***from Kroon*** about how he did what Plaintiffs claim he did. Plaintiffs also do not cite any authority, whether in the form of case law or an expert opinion, to confirm that the manner in which Plaintiffs claim Kroon has now computed hourly damages is the proper way to compute hourly damages. Instead, Plaintiffs' counsel merely dictated a brief outlining his apparent understanding of how Kroon arrived at his newest damages figures, which "nearly double" the damages disclosed by Plaintiffs' expert deadline. (Plaintiffs' Brief, p. 32).

Plaintiffs do not have any expert testimony to establish that the manner in which Kroon allegedly computed hourly damages is a proper way to do it. Where a party offers calculations to prove damages, that party has the "'**obligation to provide evidence of facts that support the applicability**'" of the expert's damages methodology. Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1056-57 (8th Cir. 2000) (quoting Virgin Atlantic Airways Ltd. v. British Airways PLC, 69 F.Supp.2d 571, 580 (S.D.N.Y. 1999)). Although Plaintiffs' counsel spends over 5 pages trying to explain his understanding of how Kroon calculated Plaintiffs' hourly damages, counsel's statements are not evidence. Lingar v. Bowersox, 176 F.3d 453, 460 (8th Cir. 1999). Moreover, Plaintiffs argue Kroon will only provide "summation" testimony about the new damage calculations, thereby conceding Kroon cannot offer an expert opinion that the manner in which he allegedly computed hourly damages is appropriate. (Plaintiffs' Brief, p. 3). Plaintiffs do not have any facts supporting the applicability of Kroon's alleged hourly-damages methodology to this case. In fact, as of right now, there is no evidence whatsoever of what that methodology even

11

is. **The only thing Plaintiffs have produced to date is Kroon's hourly damage totals and Plaintiffs' counsel's unsupported explanation** *in a brief* **of how Kroon allegedly calculated those totals**. Werner and this Court are both left to guess at -- or take Plaintiffs' counsel's word for -- how Kroon arrived at those figures.

In addition to being unsupported by any evidence, Plaintiffs' "explanation" of Kroon's hourly damages does nothing to alleviate the prejudice to Werner caused by Plaintiffs' eleventh-hour disclosure. The fact that Plaintiffs' counsel describes Kroon's new computations as "simple arithmetic" does not make it so. The fact that Plaintiffs' counsel believes it will not take hundreds of man-hours to review and analyze a 14,000+ page document that includes new damage totals for each of the over 55,000 class members in this lawsuit does not make it so. As Plaintiffs' counsel is well aware from Kroon's two depositions, Werner's counsel analyzes Kroon's calculations by printing out computations for individual drivers, comparing those computations against the driver's logs, and identifying discrepancies or legal inconsistencies. (See, e.g., Filing 304-5, Ex. 33 to 2nd Kroon Depo.). Dozens of exhibits of that nature were prepared by Werner's counsel and marked at Kroon's two depositions. (See, e.g., Filing Nos. 304-5 - 304-12, 2nd Kroon Depo. Exhibits). To properly prepare for and defend against the new damage computations at trial, Werner's counsel will similarly have to pore over the new damage totals and compare them against the driver log entries. That task is made monumentally more difficult by the fact that **as of this moment, less than three weeks before trial,** ***Plaintiffs still have not ever disclosed a report or affidavit*** <u>***from Kroon***</u> ***that actually explains Kroon's method for computing the hourly damages disclosed on August 5, 2015.*** Plaintiffs' counsel simply claims, without support, that Kroon calculated those values by multiplying certain columns in his August 1, 2014 spreadsheet by the applicable minimum wage. (See, e.g., Plaintiffs' Brief, p. 3).

Werner cannot cross-examine Kroon about his new theory of damages based on the unsupported statements of Plaintiffs' counsel. The Court established a scheduling order that provided a specific deadline for disclosure of damage computations by Plaintiffs' expert; time for Werner to review, analyze, and have its expert comment on those computations; and an opportunity for Werner to depose Kroon regarding his computations. (Filing 295, 2nd Amended Final Progression Order, ¶3; see also Filing 275, Memorandum & Order, p. 6, ¶4 (allowing Werner to re-depose Kroon after he recalculated Plaintiffs' weekly damages)). Plaintiffs' eleventh-hour disclosure of hourly damages has robbed Werner of the opportunity to properly review and analyze Plaintiffs' new damage calculations. Plaintiffs' attempt at "trial by ambush is precisely what the [disclosure requirement of the Federal Rules] is attempting to eliminate." Cong. Air, Ltd. v. Beech Aircraft Corp., 176 F.R.D. 513, 516 (D. Md. 1997) (quotation omitted). Plaintiffs have not, and cannot, provide any justification for their failure to timely disclose the hourly damage totals and calculations which their expert admits he had as of August 1, 2014.

**C.      The cases cited by Plaintiffs do not support their argument that Kroon is entitled to supplement his expert disclosures at the eleventh hour, to "nearly double" Plaintiffs' claimed damages.**

Plaintiffs disingenuously claim courts routinely allow experts to offer undisclosed opinions that are "logical inferences" deducible from their timely-disclosed opinions. (Plaintiffs' Brief, p. 22-23) (citing Thudium v. Allied Prods. Corp., 36 F.3d 767, 770 (8th Cir. 1994)). However, Plaintiffs do not cite a single case in which an expert was allowed to submit new damage totals one month before trial that "nearly double" the total damages claimed for over 55,000 class members.

In Thudium, the plaintiff's expert opined that a machine was in its as-manufactured condition when it fell on the plaintiff and it did not comply with various engineering standards. Id. at 769. Before trial, the expert did not opine on the specific cause of the accident. Id. During

trial, the expert testified that he could not identify a specific defect that caused the accident but the accident would not have occurred but for the various defects he identified. Id. at 769-70. The Eighth Circuit concluded the expert's opinion that the accident would not have occurred but for the defects could logically be inferred from his conclusion that the machine had numerous defects when the accident occurred. Id. at 770. That is a far cry from the situation here. Plaintiffs' August 1, 2014 expert report disclosed total damages of just over $28,000,000, calculated on a weekly basis. (Filing 351-1, Culhane Aff., ¶7 & Ex. C, pp. 8-9). Plaintiffs' latest disclosure computes total damages of over $45,000,000, computed on an hourly basis. (Id. at ¶¶7-8, Ex. C & Ex. D). Plaintiffs admit the August 5, 2015 disclosure "nearly doubles" the timely-disclosed damage calculations. (Plaintiffs' Brief, p. 32). Unlike in Thudium, neither Werner nor this Court could have inferred, either by logic or sheer guesswork, that Kroon really meant Plaintiffs suffered over $45,000,000 in damages when he stated in his August 1, 2014 report that Plaintiffs suffered $28,000,000 in damages.

Plaintiffs misquote Shuck v. CNH America, LLC, claiming the Eighth Circuit allowed an expert to testify beyond the scope of his report in that case because the "expansion in testimony was limited and closely related to the opinions previously disclosed." (Plaintiffs' Brief, p. 23) (citing 498 F.3d 868, 876 (8th Cir. 2007)). The Eighth Circuit did not say anything of the sort. In Shuck, an expert opined as to the cause of a fire in his report and then offered a second possible cause for the fire at trial. 498 F.3d at 872-73 & 875-76. The Eighth Circuit specifically noted the expert expressed some opinions that exceeded the scope of any pretrial disclosures but found no prejudice because those were not the expert's critical opinions -- the critical portion of his testimony was his explanation that certain other factors did **not** cause the fire and not his "lukewarm" assessment of other possible fire causes. Id. at 875-76. Here, by contrast, Kroon was

14

retained for only one purpose - to compute the damages owed to Plaintiffs. His new, drastically-increased damage totals are his critical opinions.

The <u>Dunafon</u> case cited by Plaintiffs is similarly not helpful to Plaintiffs' argument. In <u>Dunafon</u>, an economic expert opining on the anticompetitive effect of a restrictive covenant reviewed updated figures after his deposition and before trial. <u>See Dunafon v. Delaware McDonald Corp.</u>, 691 F.Supp. 1232, 1234 (W.D. Mo. 1988). The court denied the plaintiffs' motion to strike testimony based on the updated figures, noting "the substance of [his] testimony was unchanged from deposition to the trial," because he found no anticompetitive effect at either time, and his review of the updated figures "did *not* change his previous results." <u>Id.</u> (emphasis in original). Here, Kroon's eleventh-hour computation of new hourly damage totals "nearly doubles" his timely-disclosed damage computations. (Plaintiffs' Brief, p. 32).

Plaintiffs also claim courts routinely allow damage computations "to be updated to face new realities or new assumptions, as long as the underlying documents and methodologies used were previously disclosed." (Plaintiffs' Brief, p. 25). The problem with this argument is that there is no new reality or new assumption at issue here -- Kroon stated in his August 1, 2014 report that he had done the work necessary to generate hourly damage totals but Plaintiffs did not disclose Kroon's hourly damage totals at that time. (Filing 351-1, Culhane Aff. Ex. C, p. 9). It is of no consequence that the Court had not yet ruled on Plaintiffs' motion to use an hourly damage standard. As of August 1, 2014, the Court had not ruled on any of Plaintiffs' theories. However, that did not stop Plaintiffs from disclosing Kroon's weekly damage computations. The cases cited by Plaintiffs are distinguishable and not helpful here. In <u>McHugh</u>, the court concluded a new opinion by plaintiff's medical expert was consistent with the general scheme of the opinion disclosed before trial. <u>See McHugh v. Olympia Entertainment, Inc.</u>, 37 F. App'x. 730, 735-36 (6th

Cir. 2002). That is certainly not the case here, where Kroon's new computations "nearly double" his timely-disclosed computations. In ZF Meritor, the recalculated damages at issue would be done pursuant to a methodology already approved by the district court but here, there is no evidence of Kroon's methodology for computing the latest round of damages. ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 298-300 (3d Cir. 2012). In another case, the defendant did not timely object to recalculated damages, whereas Werner filed the instant motion within days of receiving Plaintiffs' new damage totals. Phil Crowley Steel Corp. v. Macomber, Inc., 601 F.2d 342, 344-45 (8th Cir. 1979). In yet another case, the court granted the defendant's motion for new trial and allowed ***both parties' experts*** to recalculate damages after agreeing with the defendant that there was no evidence of damages before a particular date. Apple Inc. v. Samsung Electronics, Co., 2013 WL 5979832, *1-2 (N.D. Cal. Nov. 9, 2013). However, that court specifically denied one party's attempt to also offer a new theory regarding damages at retrial, noting the party waived the issue by not raising it earlier. Id. at *2-3.

The Acosta v. Tyson case is distinguishable because the recalculation of damages after trial had to do with calculating damages for certain individuals who would not have fallen within the original class definition. Case No. 08-cv-36, 2013 WL 3716445, *1 (D. Neb. July 12, 2013). The parties debated the issue at trial and both parties were allowed to submit briefs addressing whether those individuals should be part of the class. Id. Judge Batallion ultimately ruled that they were and allowed plaintiffs' expert to calculate damages for those individuals after the trial. Id. Under those circumstances, the court found all parties contemplated a recalculation of damages after trial if the court ruled for plaintiffs on that issue. Id. Here, by contrast, the Court already extended Plaintiffs' expert deadline once and simultaneously continued the trial, allowed Werner's expert to issue a new report, and allowed Werner to re-depose Kroon. (Filing 275,

16

Memorandum & Order, p. 6). Werner certainly did not anticipate that Plaintiffs, after having been granted leave to submit two supplemental expert reports after their original expert deadline, would produce new damage computations less than a month before trial which "nearly double" Plaintiffs' claimed damages.

Plaintiffs seek to distinguish the cases cited in Werner's opening brief by arguing "Plaintiffs disclosed their **theory** of entitlement to hour-by-hour damages in Kroon's timely August 1, 2014 report." (Plaintiffs' Brief, p. 26) (emphasis in original). Plaintiffs would have this Court believe they properly disclosed Kroon's new opinion that Plaintiffs actually suffered over $45,000,000 in hourly damages because he made a passing reference to his **ability to compute** hourly damages in his August 1, 2014 report. (Filing 351-1, Culhane Aff. Ex. C, p. 9). The Guidance case cited in Werner's opening brief specifically rejected this argument, concluding a party did not timely disclose damage computations where its expert "made passing reference to [that theory of damages] without providing a methodology or means of calculating it" and without disclosing the amount of those alleged damages. See Guidance, 2009 WL 3672373, *8. Similarly, in this case, Kroon's August 1, 2014 report computed total damages of $28,000,000, computed on a weekly basis. (Filing 351-1, Culhane Aff. Ex. C, p. 8-9). Kroon's passing reference to his ability to compute hourly damages is of no consequence, because **he did not actually disclose any hourly damage totals** in his August 1, 2014 report.

**D.    Plaintiffs have not made a showing of good cause for failing to timely disclose Kroon's hourly damage computations and the prejudice to Werner is incurable. If the Court allows Plaintiffs to use the new damage computations, the trial should be continued so that Werner can review and analyze the new computations and re-depose Kroon.**

In determining whether a party's failure to disclose was substantially justified and/or is harmless, the Court considers a variety of factors, including (1) the importance of the excluded material; (2) the party's explanation for its failure to make a timely disclosure of the information;

17

(3) the potential prejudice that would arise from allowing the information to be used at trial; and (4) the availability of a continuance to alleviate the prejudice. <u>Tlamka v. Serrell</u>, Case No. 97-cv-3212, 2002 WL 500656, *4 (D. Neb. March 25, 2002).

Plaintiffs offer two conflicting explanations for their failure to timely disclose. First, Plaintiffs claim they did timely disclose the hourly damage computations. (Plaintiffs' Brief, p. 30-31). That argument is directly refuted by Kroon's statements in the August 1, 2014 report and by Plaintiffs' disclosure of a new damages spreadsheet on August 5, 2015. Next, they claim they were justified in not disclosing hourly damage totals sooner because the Court only granted their motion for summary judgment on August 3, 2015. (<u>Id</u>.). However, the Federal Rules require that a party disclose a computation of each category of damages ***at the beginning of the case***. <u>See</u> Fed. R. Civ. P. 26(a). Moreover, Plaintiffs disclosed weekly damage calculations in August, 2014, well before this Court's summary judgment ruling and could have disclosed the hourly damage calculations then as well. This factor weighs in favor of exclusion.

Plaintiffs claim the evidence is critically important because the computations represent damages to which they are "legally entitled." (Plaintiffs' Brief, p. 32). As an initial matter, the Court did not determine that Plaintiffs are "legally entitled" to any damages calculated by Kroon - the case is set for a trial on damages. Moreover, Plaintiffs litigated this case for almost four years without producing any hourly damage totals and Plaintiffs will still be able to offer evidence of the timely-produced weekly damages. This factor weighs in favor of exclusion.

The prejudice to Werner is severe and incurable. Werner's counsel will be forced to devote hundreds of hours to reviewing Plaintiffs' new damage calculations, when that time should be spent preparing witnesses and exhibits for the upcoming trial. Moreover, Plaintiffs still have not disclosed any explanation by Kroon regarding his new computations, further

complicating the task for Werner and its counsel. Werner will not be able to depose Kroon about his new calculations. Plaintiffs' assertion that "Defendants had all the information they needed to make final hour by hour calculations" fails to account for the fact that Plaintiffs had an obligation to disclose Kroon's opinion on hourly damages by their expert deadline, so that Werner's expert could review and analyze it and Werner's counsel could depose Kroon about it.

Because there is no explanation for Plaintiffs' failure to disclose and the prejudice to Werner is incurable, Werner respectfully submits that Plaintiffs' new damage computations should be stricken. The trial was already continued once by almost one year due to Plaintiffs' conduct, because Kroon admittedly made over $11.2 million in errors in his first report and the Court generously allowed Plaintiffs to submit two supplemental reports by Kroon. (Filing 275, Memorandum & Order, p. 6; see also generally Filing 295, 2nd Amended Final Progression Order). The Court also allowed Werner's expert to examine Kroon's new calculations at that time and to re-depose Kroon. (Filing 275, Memorandum & Order, p. 6). Consistent with the Court's prior rulings, if the Court is inclined to allow Plaintiffs to use Kroon's latest damage computations, the trial should be continued again and Werner should be allowed to have its expert examine this newest round of computations and to once again re-depose Kroon.

Plaintiffs fault Werner for not seeking a continuance in its opening Motion. Because trial has already been continued once and is only weeks away, Werner believes an order striking Plaintiffs' new damage calculations is the most appropriate remedy. See Tlamka, 2002 WL 500656, *5 (stating "because this case has now been pending for almost five years and trial is set to begin in approximately two weeks, I am not inclined to grant a continuance to reopen discovery"); see also, e.g., Transclean Corp. v. Bridgewood Servs., Inc., 101 F. Supp. 2d 788, 796 (D. Minn. 2000) ("Since Trial is set to begin in less than one week, there is virtually no

opportunity for a continuance, or a reopening of discovery, so as to alleviate the prejudice to [the plaintiff]."). However, if Plaintiffs are allowed to use the new calculations at trial, fairness dictates that Werner should be given time to review and analyze the new computations and a continuance is warranted.

In the <u>Phil Crowley</u> case relied on by Plaintiffs, the defendant did not object to the late disclosed evidence until **<u>after</u>** the plaintiff's expert testified at trial and, even then, only moved to strike the evidence. <u>Phil Crowley Steele Corp. v. Macomber, Inc.</u>, 601 F.2d 342, 344-45 (8th Cir. 1979). There, the court correctly ruled the defendant waived its rights by not objecting until after the witness had actually testified. <u>Id.</u> By contrast, Werner filed its motion three business days after receiving Plaintiffs' August 5, 2015 damage computations. (<u>See</u> Filing 349, Werner's Motion to Exclude and/or Strike).

## III.   CONCLUSION

For the foregoing reasons, and those set forth in Werner's initial brief, Kroon's August 5, 2015 damage calculations should be excluded. In the alternative, if the Court is inclined to allow Plaintiffs to use that information at trial, the September 9, 2015 trial should be continued to allow Werner's expert time to review and comment on those computations and so Werner can re-depose Kroon regarding his new damage totals.

WERNER ENTERPRISES, INC., and
DRIVERS MANAGEMENT LLC, Defendants

By: /s/ Joseph E. Jones
    Joseph E. Jones, #15970
    Elizabeth A. Culhane, #23632
    FRASER STRYKER PC LLO
    500 Energy Plaza
    409 South 17th Street
    Omaha, NE 68102-2663
    (402) 341-6000
    jjones@fraserstryker.com
    eculhane@fraserstryker.com
    ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court for the United States District Court for the District Court of Nebraska using the CM/ECF system this 19th day of August, 2015, which system sent notification of such filing to counsel of record.

/s/ Joseph E. Jones

1337577v2

21