**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **PHILIP PETRONE, et al.,** | **MEMORANDUM AND ORDER** |
| **Plaintiffs,** | |
| **vs.** | **8:11CV401** |
| **WERNER ENTERPRISES, INC., AND DRIVERS MANAGEMENT, LLC;** | |
| **Defendants.** | |
| **PHILIP PETRONE, et al.;** | **8:12CV307** |
| **Plaintiffs,** | |
| **vs.** | |
| **WERNER ENTERPRISES, INC., AND DRIVERS MANAGEMENT, LLC,** | |
| **Defendants.** | |

This matter is before the Court on Plaintiffs' Motion for Partial Judgment as a Matter of Law, Motion for New Trial, and Motion to Amend the Judgment, ECF No. 551 in Case No. 8:11CV401; ECF No. 451 in Case No. 8:12CV307. Also before the Court is Plaintiffs' Motion for Attorney's Fees and Costs under 29 U.S.C. § 216(b) and Motion for Service Payments for Named Plaintiffs, ECF No. 554 in Case No. 8:11CV401; ECF No. 454 in Case No. 8:12CV307. For the reasons stated below, the Motion for Attorney's Fees and Costs will be granted, consistent with this Memorandum and Order. The

Motion for Partial Judgment as a Matter of Law, Motion for New Trial, and Motion to Amend the Judgment will be denied.[1]

## BACKGROUND

The Court's previous orders contain a detailed recitation of the procedural and historical background of this case. By way of summary, the Court states the following:

Defendants Werner Enterprises, Inc., and Drivers Management, LLC, (collectively "Werner") operate an eight-week Student Driver Program as part of the training for new truck drivers. Plaintiffs filed this class action lawsuit seeking compensation for unpaid wages allegedly earned during off-duty time spent on short rest breaks and in their trucks' sleeper berths. In May 2017, the Court held a jury trial on the issue of damages for Plaintiffs' short rest break claims and liability on Plaintiffs' sleeper berth claims. Following the three-day trial, the jury awarded $779,127.00 in damages on Plaintiffs' short rest break claims, an amount equal to those calculated by Plaintiffs' expert. *See* Jury Verdict, ECF No. 516, Page ID 43269. The jury found that Plaintiffs failed to demonstrate that Werner required or allowed Plaintiffs to work during time logged in the sleeper berth in excess of eight hours each 24-hour period. *Id.* at Page ID 43270.

Plaintiffs move to alter or amend the Judgment, ECF No. 545, arguing that the jury's verdict and eventual judgment was based on an erroneous legal standard. Specifically, Plaintiffs request an Order granting Plaintiffs' partial judgment as a matter of law under Fed. R. Civ. P. 50 as to the compensability of sleeper berth time and 59(a),

---

[1] Because the Motions and related documents are identical in both cases, the Court will omit reference to the ECF filing numbers in Case No. 8:12cv307. Unless otherwise indicated, all references to the record before the Court will be to filings in Case No. 8:11cv401.

and/or in the alternative, a partial new trial on Plaintiffs' sleeper berth claims pursuant to Fed. R. Civ. P. 59(a), and an amendment to the judgment pursuant to Fed. R. Civ. P. 59(e).

Plaintiffs also seek $2,192,500.00 in attorney's fees; $201,465.75 in nontaxable costs; and an award for Named Plaintiffs' service in the amount of $10,000 each, totaling $40,000, to be paid from unclaimed funds of the verdict, or, if the amount of unclaimed funds cannot cover the service payments, to be paid from Plaintiffs' counsel's fee award.

## MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW

### I. Standard of Review

Federal Rule of Civil Procedure 50(a) states that "[a] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." If a court does not grant a motion for judgment as a matter of law made at trial under Rule 50(a), it may consider a renewed motion after the entry of a final judgment under Rule 50(b). "A court reviewing a Rule 50(b) motion is limited to consideration of only those grounds advanced in the original, Rule 50(a) motion." *Nassar v. Jackson*, 779 F.3d 547, 551 (8th Cir. 2015) (citing *Graham Constr. Servs. v. Hammer & Steel Inc.*, 755 F.3d 611, 617-18 (8th Cir. 2014)). Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).

"In both Rule 56 motions for summary judgment and Rule 50 motions for judgment as a matter of law, the inquiry is the same: '[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Linden v. CNH America, LLC,* 673 F.3d 829, 834 (8th Cir. 2012) (alteration in original) (quoting *Kinserlow v. CMI Corp.,* 217 F.3d 1021, 1025 (8th Cir. 2000)). "To sustain an entry of judgment as a matter of law, '[t]he evidence must point unswervingly to only one reasonable conclusion. This demanding standard reflects our concern that, if misused, judgment as a matter of law can invade the jury's rightful province.'" *Penford Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 662 F.3d 497, 503 (8th Cir. 2011) (quoting *Phillips v. Collings,* 256 F.3d 843, 847 (8th Cir. 2001)).

## II. Discussion

Plaintiffs' Motion for Judgment as a Matter of Law must be denied because it was not raised before the case was submitted to the jury. As stated above, "[a] court reviewing a Rule 50(b) motion is limited to consideration of only those grounds advanced in the original, Rule 50(a) motion." *Nassar*, 779 F.3d at 551; The Eighth Circuit has repeatedly concluded that post-trial motions under Rule 50(b) may not be considered unless a litigant made a pre-verdict motion under Rule 50(a). *See Graham Constr. Servs. v. Hammer & Steel Inc.*, 755 F.3d 611, 618 (8th Cir. 2014) ("Graham did not move for [judgment as a matter of law] as to H&S's claim for breach of contract until *after* the verdict through a Rule 50(b) motion. Graham's failure to raise this challenge in a Rule 50(a) motion waived the opportunity to raise it after trial."); *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 901 (8th Cir. 2006) ("A post-trial

motion for judgment can be granted only on grounds advanced in the pre-verdict motion."); *Walsh v. National Computer Systems, Inc.*, 332 F.3d 1150, 1158 (8th Cir. 2003) (stating that "a post-trial motion for judgment may not advance grounds that were not raised in the pre-verdict motion.").

Plaintiffs request that the Court conclude, as a matter of law, that all sleeper berth time beyond 8 hours per day logged by the drivers in the class constitutes hours worked for purposes of their FLSA claims. However, because Plaintiffs did not make a Rule 50(a) motion at trial regarding their sleeper berth claims, they may not now make a motion under Rule 50(b). After Plaintiffs rested, the Court specifically asked the parties whether they would like to make any motions. Trial Transcript Vol. III at 587, ECF No. 548, Page ID 55952. Plaintiffs did not make any motions at that time. After both parties rested, the Court once again invited the parties to make motions before the case was submitted to the jury. *Id.* at 603, Page ID 55969. At that point, Plaintiffs moved for judgment as a matter of law as to the damages owed on the short rest break claim, which the Court denied. *Id.* at 603-04, Page ID 55968-69. Plaintiffs did not make any motions regarding their sleeper berth claims. Because Plaintiffs did not make a pre-verdict motion under Rule 50(a) regarding their sleeper berth claims, the Court cannot consider their renewed motion under Rule 50(b).

Although Plaintiffs did not make a motion under Rule 50(a) for their sleeper berth claims, they argue that the Court should nevertheless consider their motion under Rule 50(b) because it concerns only legal matters. Plaintiffs cite no direct authority for the position that purely legal arguments under Rule 50(b) may be considered even absent a pre-verdict motion, and Plaintiffs' policy arguments do not overcome the express

language of Rule 50 and Eighth Circuit case law. Accordingly, Plaintiffs' Rule 50(b) motion is not preserved by the fact that it is a purely legal question.

## MOTION FOR NEW TRIAL/ALTER OR AMEND JUDGMENT

### I. Standards of Review

#### A. Motion For New Trial Under Rule 59(a)

"A new trial may be granted on all or some issues 'after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court.'" *Stults v. Am. Pop Corn Co.*, 815 F.3d 409, 414 (8th Cir. 2016) (quoting Fed.R.Civ.P. 59(a)(1)(A)). A new trial may be granted when the first trial resulted in a miscarriage of justice, the verdict was against the weight of the evidence, the damages award was excessive, or there were legal errors at trial. *Gray v. Bucknell,* 86 F.3d 1472, 1480 (8th Cir.1996); *see also* Fed. R. Civ. P. 59(a). "With respect to legal errors, a 'miscarriage of justice' does not result whenever there are inaccuracies or errors at trial; instead, the party seeking a new trial must demonstrate that there was prejudicial error. *Trickey v. Kaman Indus. Techs. Corp.*, 705 F.3d 788, 807 (8th Cir. 2013) (citation omitted). "The standard for granting a motion for new trial is higher [than the standard for granting a motion for judgment as a matter of law.]" *Michigan Millers Mut. Ins. Co. v. Asoyia, Inc.*, 793 F.3d 872, 878 (8th Cir. 2015) (quoting *Howard v. Mo. Bone & Joint Ctr., Inc.,* 615 F.3d 991, 995 (8th Cir. 2010)). "The key question is whether a new trial should have been granted to avoid a miscarriage of justice." *Id.* (citation omitted).

#### B. Motion to Alter or Amend Under rule 59(e)

"Rule 59(e) motions serve the limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.'" *United States v. Metro. St. Louis*

*Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (quoting *Innovative Home Health Care v. P. T.-O. T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998)). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.* (internal quotation marks omitted) (quoting *Innovative Home Health Care v. P. T.-O. T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998)).

## II. Discussion

Plaintiffs' principal argument is that the Court erred in its previous rulings on Plaintiffs' sleeper berth claims.[2] Plaintiffs even characterize their requested relief as "essentially, the reinstatement of Judge Strom's order [the SJ Order] finding excess sleeper berth time compensable as a matter of law." Pl. Reply at 4, ECF No. 563, Page ID 56660. Each of Plaintiffs' grounds to partially alter or amend the judgment and/or grant a new trial is based on their argument that the Court's ruling with respect to the sleeper berth claims was legally incorrect. As a consequence, Plaintiffs argue, the Court's rulings in pretrial motions and jury instructions prejudiced Plaintiffs.

---

[2] Specifically, Plaintiffs state that the Court made the following errors: (1) the Court's pretrial summary judgment rulings set forth an erroneous legal standard regarding Plaintiffs' sleeper berth claims; (2) the Court failed to enter an order stating that sleeper berth time in excess of 8 hours per day is compensable, or presumptively compensable, as a matter of law and should have ordered a new trial to resolve whether Werner paid Plaintiffs a minimum wage; (3) the Court's rulings and instructions during the trial were based on the Court's erroneous pretrial rulings on Plaintiffs' sleeper berth claims; (4) the Court erroneously required Plaintiffs to prove that they were continuously on duty during time logged in the sleeper berth; (5) the Court's motions in limine were based on the Court's erroneous pretrial rulings on Plaintiffs' sleeper berth claims; (6) the Court failed to give jury instructions Plaintiffs requested regarding its sleeper berth claims; (7) the Court adopted Werner's proposed instructions that were based on an incorrect legal standard with respect to the sleeper berth claims; and (8) the jury instructions contained inaccurate statements of the law regarding the sleeper berth claims. *See* Motion for Partial Judgment/New Trial, ECF No. 551.

Regardless of whether Plaintiffs have waived their arguments,[3] there has been no miscarriage of justice that justifies amending the judgment and/or granting a new trial. Plaintiffs made similar, if not identical, arguments with respect to their sleeper berth claims in their opposition to Werner's Motion to Revise and Werner's Motion to Clarify. The Court considered Plaintiffs' arguments and stated its ruling and reasoning in several pretrial orders. *See, e.g.,* Revised Order at 14-17, ECF No. 405, Page ID 42147-50; Clarification Order at 5-6, ECF No. 466, Page ID 42722-23. Plaintiffs present no argument that the Court has not already considered and analyzed. Thus, Plaintiffs essentially ask the Court to reconsider its ruling once again. The Court has reviewed the record—including Plaintiffs' arguments in this Motion and in previous motions—and concludes that its previous rulings on Plaintiffs' sleeper berth claims were not manifestly erroneous. Accordingly, the Court's rulings related to Plaintiffs' sleeper berth claims, including its rulings on the jury instructions, did not result in prejudicial error.

## MOTION FOR ATTORNEY'S FEES AND COSTS

Plaintiffs seek $2,192,500.00 in attorney's fees and $199,512.31[4] in nontaxable costs. Plaintiffs also ask the Court to award Named Plaintiffs service payments of $10,000 each, totaling $40,000, to be paid from unclaimed funds of the verdict, or, if the amount of unclaimed funds cannot cover the service payments, to be paid from Plaintiffs' counsel's fee award. Werner did not oppose Plaintiffs' request for service payments, and they will be awarded as requested. The Court will award Plaintiffs' attorney's fees and nontaxable costs; however, for the reasons stated below, Plaintiffs'

---

[3] Werner argues that Plaintiffs have waived these arguments by not specifically addressing them at trial.

[4] Plaintiffs originally sought $201,465.75, but revised the request downward in their Reply Brief. *See* ECF No. 565, Page ID 56701.

requested award will be adjusted to reflect a reasonable award under the circumstances of this case.

## I. Attorney's Fees

The FLSA only authorizes an award of fees to a plaintiff who has prevailed in the litigation. *See* 29 U.S.C. § 216(b). Whether a litigant is a "prevailing party" is a legal question. *Warner v. Indep. Sch. Dist. No. 625*, 134 F.3d 1333, 1336 (8th Cir. 1998); *Jenkins v. State of Missouri*, 127 F.3d 709, 714 (8th Cir. 1997) (en banc). In *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992),[5] the Supreme Court held that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." The relief may take the form of an enforceable judgment, a consent decree, or a settlement. *Id.* at 111. The term "prevailing party" is generously defined, and whether a party prevailed does not turn on the magnitude of the plaintiff's success. *Id.* at 114.

In this case, it is undisputed that Plaintiffs prevailed on their short rest break claims. On August 3, 2015, the Court granted Plaintiffs' motions for summary judgment on their short rest break claims. ECF No. 347. At trial, Plaintiffs obtained a verdict for the full amount claimed as damages for their short rest break claims. Together with the post-trial liquidated damages award, Plaintiffs are entitled to an amount slightly over $829,000.00. Accordingly, Plaintiffs were prevailing parties under the FLSA, and are entitled to an award of their reasonable attorney's fees.

---

[5] Although Farrar is not a FLSA case, the Eighth Circuit has stated that "[d]ecisions construing this term in the civil rights fee-award statute, 42 U.S.C. § 1988, 'are generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party.'" *Warner*, 134 F.3d at 1336 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983)).

Although Plaintiffs are prevailing parties, the Court must determine what is a reasonable award. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Miller v. Dugan*, 764 F.3d 826, 830-31 (8th Cir. 2014) (internal citations omitted) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 & 437 (1983)); *see also Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) ("The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates."). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Miller*, 764 F.3d at 831 (quoting *Hensley*, 461 U.S. at 437).

The Court has reviewed the record and concludes that Plaintiffs are entitled to an award of attorney's fees. However, the fee award must be adjusted to reflect reasonable Omaha rates and reasonable expenditures of time under the circumstances of this case. Plaintiffs are also entitled to a significant award of nontaxable costs, but that amount must also be adjusted to reflect reasonable expenses.

### A. Reasonableness of Rates

Plaintiffs have not demonstrated that Philadelphia rates should apply, and the requested rates must be adjusted to the Omaha market. "[T]he lodestar looks to 'the prevailing market rates in the relevant community.'" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (quoting *Blum v. Stenson,* 465 U.S. 886, 895 (1984). To determine what would qualify as a reasonable rate in the prevailing Omaha market, the court reviewed and analyzed reported decisions from this court over the past several

years involving attorney fee awards.  *Bernbeck v. Gale*, No. 8:13CV228, 2015 U.S. Dist. LEXIS 45837, at *6 (D. Neb. Apr. 8, 2015), *vacated on other grounds by* 829 F.3d 643, 644 (8th Cir. 2016).[6]  "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

Plaintiffs argue that Philadelphia rates are appropriate because this case was a complex, national FLSA class action and Omaha counsel with appropriate expertise could not be located.  In the alternative, Plaintiffs argue that if Omaha rates must apply, the Court should adopt the rates set forth in the Affidavit of Omaha attorney Christopher Welsh. *See* ECF No. 556-2.  For the reasons stated below, out-of-state rates are not appropriate in this case and the Court will adopt reasonable Omaha rates.

### *1.  Exceptions to the Local Rates Rule*

Plaintiffs assert that the reasonable rates for their counsel are: $525/hour for Richard Swartz; $500/hour for Justin Swidler; $500/hour for Thomas Sweeney; $450/hour for Joshua Boyette; and $375/hour for Daniel Horowitz. However, Plaintiffs have not demonstrated that an exception to the local rates rule applies to this case. Plaintiffs have not shown that a local attorney would be unwilling or unable to take this

---

[6] Although not expressly discussed, in determining the reasonable rate the Court has considered the factors outlined in *Johnson v Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir 1974). *See McDonald v Armontrout*, 860 F.2d 1456, 1459 (8th Cir 1988).  The factors include: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *McDonald*, 860 F.2d at 1459 n.4.

case. Nor have they shown that, due to their expertise, Plaintiffs' counsel would progress the case more quickly and efficiently.

"Reimbursement for work performed by out-of-town lawyers charging out-of-town rates is generally permitted only when in-town counsel with expertise in a particular area cannot be located." *Powers v. Credit Mgmt. Servs.*, No. 8:11CV436, 2016 U.S. Dist. LEXIS 164362, at *7 (D. Neb. Nov. 29, 2016) (citing *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140-41 (8th Cir. 1982)); *see also Emery*, 272 F.3d at 1048 ("In a case where the plaintiff does not use local counsel, the court is not limited to the local hourly rate if the plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case.").

In this case, Plaintiffs assert that they would not have been able to find a suitable Omaha attorney to take this case. In support, they offer the testimony of Christopher Welsh, who asserts that that he "is not aware of a Nebraska-based law firm" that would have litigated this case. *Id.* ¶ 5, ECF No. 556-2, Page ID 56509. Welsh's statement does not provide adequate foundation for Plaintiffs' contention that no local firms were willing and able to take the case. Plaintiffs do not address whether other local firms were consulted on the case, and no evidence suggests Plaintiffs were unable to find local firms. Because Plaintiffs have not shown that local counsel was unable or unwilling to take this case, this exception to the local rate rule does not apply.

It is also recognized that "attorneys specializing in complex areas of the law may be entitled to a higher, non-local rate because the attorneys' familiarity with law will enable them to handle the case in a shorter time period than local counsel." *Shirt v. Hazeltine*, 2006 U.S. Dist. LEXIS 42206, at *7-8 (D.S.D. June 22, 2006) (citing *Planned*

*Parenthood, Sioux Falls Clinic v. Miller,* 70 F.3d 517, 519 (8th Cir. 1995)). "To limit rates to those prevailing in a local community might have the effect of limiting civil rights enforcement to those communities where the rates are sufficient to attract experienced counsel." *Casey v. City of Cabool, Mo.,* 12 F.3d 799, 806 (8th Cir. 1993).

As noted above, Plaintiffs have not shown that local counsel was lacked the expertise to handle this case. Further, there is no evidence that the case moved more efficiently because of Plaintiffs' lawyers expertise. While Plaintiffs' counsel proved effective in representing their clients' interests, this case proceeded for nearly seven years. While Plaintiffs were by no means solely responsible for the prolonged litigation, there is no evidence that their counsel's expertise proved more efficient than local counsel. Accordingly, the Court will apply local rates.

### *2. Reasonable Omaha Rates*

Although Plaintiffs assert that Philadelphia rates apply, in the alternative, they set forth the rates they believe are reasonable for this market. As evidence of the reasonableness of these rates, Plaintiffs again refer to the Affidavit of Christopher Welsh who opines that reasonable Omaha rates would be $425/hour for Swartz; $395/hour for Swidler; $395/hour for Sweeney; $350/hour for Boyette; and $300/hour for Horowitz.

The Court concludes that these rates are unreasonably high for the Omaha market. A survey of recent cases in this district demonstrates that the rates requested by Plaintiffs are higher than the prevailing rates in the Omaha community for attorneys with comparable experience. This Court has generally approved rates of between $225-$325/hour for partners with less than 25 years of experience and rates of $175-$200 for

work done by associates. For example, in *Vallejo v. Amgen, Inc.*, No. 8:14CV50, 2017 U.S. Dist. LEXIS 115749, at *25-26 & n.3 (D. Neb. May 30, 2017), Judge Zwart rejected a rate of $375.00/hour for an Omaha attorney and instead awarded a flat rate of $275.00 per hour "[b]ased upon the prevailing market rate and after reducing duplication." In *Powers v. Credit Mgmt. Servs.*, No. 8:11CV436, 2016 U.S. Dist. LEXIS 164362, at *10 (D. Neb. Nov. 29, 2016), Judge Rossiter awarded hourly rates of $375 for a Chicago attorney with 43 years of experience, $350/hour for an Omaha attorney with 25 years of experience, and $325/hour for an Omaha attorney with 23 years of experience, "in view of their skill and experience and in view of the complexity of class-action consumer litigation." *Id.* Similarly, Judge Strom refused to award $450/hour to a Chicago attorney with 41 years of experience, noting "an hourly rate of $450 is out of line with rates in this locality, although they may be appropriate in Chicago and similar cities," and instead reduced his rate to $325/hour. *Henggeler v. Brumbaugh & Quandahl, P.C.*, No. 8:11CV334, 2014 U.S. Dist. LEXIS 24405, at *13-14 (D. Neb. Feb. 26, 2014).[7]

---

[7] *See also, e.g.*, Argenyi, No. 8:09CV341, 2014 U.S. Dist. LEXIS 63726, at *7-8 (concluding that the requested hourly rate of one out-of-town attorney should be reduced from $300 to $250 based on the attorney's limited experience (7 years)); *Bowen v. Allied Prop. & Cas. Ins. Co.*, No. 4:11CV3163, 2013 U.S. Dist. LEXIS 33174, at *5 (D. Neb. Mar. 11, 2013) (concluding that amounts $275, $210, and $175 were found to be reasonable rates for attorneys of varying experience, with the associates receiving less); *Johnson v. United of Omaha Life Ins. Co.*, No. 8:11CV296, 2013 U.S. Dist. LEXIS 185375, (D. Neb. July 5, 2013) (holding that rates of $340 and $350 an hour were reasonable for attorneys with 30 years of experience or specialized expertise); *Doe v. Neb. State Patrol*, No. 8:09cv456, 2012 U.S. Dist. LEXIS 181029, at *22-24 (D. Neb. Dec. 21, 2012) (collecting cases to conclude that fees between $200 to $300 to be a reasonable market rate in Nebraska); *United States v. $104,160.00 in U.S. Currency*, No. 8:08CV463, 2009 U.S. Dist. LEXIS 106968, at *2 (D. Neb. Nov. 17, 2009) (holding that $200 hourly rate for experienced Omaha attorney representing claimant in civil forfeiture action was reasonable in this locality); *Sheriff v. Midwest Health Partners, P.C.*, No. 8:07CV475, 2009 U.S. Dist. LEXIS 91786, at 10 (D. Neb. Sep. 16, 2009) (concluding that in Title VII action, Omaha attorneys' hourly rates of between $200 and $300 appeared consistent with hourly rates in relevant market based on evidence in record).

14

Swartz has 20 years of experience, Sweeney has 18 years of experience, and Swidler has 11 years of experience. Boyette graduated law school in 2010 and Horowitz graduated law school in 2009. Based upon this Court's previous holdings and its own experience and knowledge of the local rate, the Court concludes that it will apply the following rates to Plaintiffs' counsel: $325/hour for Swartz; $275/hour for Swidler; $275/hour for Sweeney; $200/hour for Boyette; and $200/hour for Horowitz. Accordingly, based on a review of the Fee Itemization Worksheet,[8] the lodestar for Plaintiffs' requested attorney's fees is as follows:

| Attorney | Hours | Rate | Fee |
|---|---|---|---|
| Swidler | 2,043.90 | $275 | $562,072.50 |
| Swartz | 351.5 | $325 | $114,237.50 |
| Boyette | 296 | $200 | $59,200.00 |
| Horowitz | 267.6 | $200 | $53,520.00 |
| Sweeney | 93.1 | $275 | $25,602.50 |
| Total | 3,052.10 | | $814,632.50 |

**B. Hours Expended**

Having determined the reasonable rates, the Court must also determine whether Plaintiffs' requested hours were reasonable. In assessing a fee calculation, courts must exclude hours that were not "reasonably expended." *Hensley*, 461 U.S. at 434. The Court has reviewed Plaintiffs' evidence and concludes it must reduce the total award to reflect hours that were duplicative, unnecessary, or unrelated to Plaintiffs' successful claim. The Court also concludes that an enhancement is not appropriate in this case.

---

[8] The Fee Itemization Worksheet appears at ECF No. 556-1, Page ID 56206-18. The table contains nearly 1,000 entries, written in 4.5 font. To properly analyze the requested entries, the Court exported the Fee Itemization to a separate, workable spreadsheet. Although the workable spreadsheet contained the same data, the Court was unable to reconstruct the page numbering in the document. Accordingly, citations to the Fee Itemization will omit page numbering.

<u>*1. Excessive, Duplicative or Unnecessary Work*</u>

*a. Erroneous Time Entries*

Plaintiffs' Fee Itemization contains a time entry for 45 hours for a single attorney on September 25, 2012, for which counsel seeks $22,500.00 in fees. The only description given for that 45-hour time entry is "Filed Class Cert." The Fee Itemization reflects that the same attorney also recorded 10.9 hours on the same day in doing other work on this case—a total of 55.9 hours in a single day. Another time entry for the same attorney includes an entry for 35 hours on August 18, 2015. Counsel for Plaintiffs acknowledged the error as typographical and voluntarily withdrew both entries from its requested award. Therefore, the award will be reduced accordingly.

*b. Hours Claimed for Second Deposition of Richard Kroon*

The Court will reduce the number of hours claimed for the second deposition of Plaintiffs' expert, Richard Kroon. Werner's counsel first deposed Kroon in March 2014. ECF No. 304-2. During Kroon's first deposition, Werner identified several errors in Kroon's calculations that, even under Plaintiffs' theory of the case, resulted in overstated and inaccurate damage calculations. Memorandum and Order at 2-3, ECF No. 275, Page ID 17456-57. Ultimately, Kroon admitted "the formulas and the computations [he] performed . . . don't consistently provide accurate results or reliable results[.]" First Kroon Depo. at 209:2-7, ECF No. 304-2. Shortly before the fact discovery deadline, Plaintiffs sought to name an additional damages expert and file a supplementary report from Kroon. The Court denied the request to name a new expert, but permitted Plaintiffs to file a supplementary report. The Court stated:

> As of the filing of Plaintiffs' Motion, more than two months had passed
> since Plaintiffs' expert deadline, defendants had spent time analyzing the

original report, and defendants had deposed plaintiffs' expert; the deadline for submitting *Daubert* motions was only a month away. Plaintiffs are seeking to impose on defendants to delay the progression of the case and to duplicate work they had already done so plaintiffs could take advantage of defendants' diligence in finding errors in the report of plaintiffs' own expert. The unfairness of such a maneuver and imposition of additional costs is not harmless.

Memorandum & Order, at 5, ECF No. 275, Page ID 17459. The Court therefore ordered that "Defendants shall be given the opportunity to depose Plaintiffs' expert [a second time] at plaintiffs' expense[.]" *Id.* at 6, Page ID 17460.

Plaintiffs now argue that the Court's reference to "expense" referred only to the costs associated with the second deposition. However, the Court was clear that the order granting a supplemental report and a second deposition resulted from the errors in Kroon's original report. The Court will not award a fee for hours spent preparing for and defending this deposition. Accordingly, the award must be reduced by 74.8 hours.

The Court will also reduce the award for hours related to Plaintiffs' motion to modify the progression order and file Kroon's supplemental report. *See* ECF No. 234. At the time of the filing of the Motion to Modify, the deadline for motions for summary judgment and to decertify the class were less than two months away. Accordingly, before the Court could rule on the Motion to Modify, both parties filed motions for summary judgment and Werner filed a motion to decertify the class and a *Daubert* motion. *See* ECF Nos. 247, 248, 253, 256, 259, 263, 264, and 269. In ruling on the Motion to Modify and granting Plaintiffs the opportunity to file a supplemental report, the Court denied as moot the motions for summary judgment, motion to decertify the class, and the *Daubert* motion. *See* ECF No. 275. After the Court set a new scheduling order, the parties later filed new *Daubert* briefs and new summary judgment motions. ECF Nos. 302-308 and 316-323.

17

Plaintiffs request fees for 60.9 hours spent opposing Werner's original *Daubert* motion, 86.2 hours spent on their initial summary judgment brief, 67.9 hours opposing Werner's original decertification motion, and 48 hours spent opposing Werner's original summary judgment. Each of these motions was denied as moot because of the untimely request to supplement Kroon's report and correct his methodological errors. *See* ECF No. 275, Page ID 17456. Accordingly, the Court will reduce Plaintiffs' claimed hours working on these motions.

### c. Sufficient Detail of Time Entries

The fee award will be reduced further because Plaintiffs' billing entries fail to provide sufficient detail in accounting for the attorneys' time. The fee applicant bears the burden of establishing entitlement to an award and documenting the hourly rates and time spent. *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (quoting *Hensley*, 461 U.S. at 437). "Inadequate documentation may warrant a reduced fee" because imprecise or incomplete billing records prevent any meaningful review of a fee application. *Id.* In *Flygt*, the Eighth Circuit affirmed the district court's reduction of the lodestar where the billing records included entries such as "legal research," "trial prep," or "met w/ client." *Id.* The Eighth Circuit noted that some entries were so vague that the district court could not determine whether they were related to the applicant's successful claims or whether they even pertained to the applicable litigation. *Id.* The Eighth Circuit suggested that, in the future, a district court may consider directing the fee applicant to submit additional records before reducing the amount, but ultimately concluded that the district court's reduction of the fee was not an abuse of discretion. *Id.*

Plaintiffs' attorneys submitted records of hours worked with vague explanations, and/or no details at all. For example, attorney Joshua Boyette submitted entries of 11 hours and 8.7 hours on June 17, 2015, and July 7, 2015, respectively, with no description of work performed. Several of Plaintiffs' attorneys billed for "prep for trial," one of the vague terms used by the attorneys in *Flygt*. Plaintiffs' attorneys Justin Swidler and Joshua Boyette submitted several entries, many in excess of 10 hours per entry, with the word "draft" as the sole description. Other entries included terms such as "continue working," "finalize," and "continue drafting" with no indication as to what work was being performed or continued. Such descriptions are particularly important in this case where the Court must distinguish between Plaintiffs' successful and unsuccessful claims. Having conducted a review of the record, the Court concludes that the fee award should be reduced by 200 hours.

### d. Excessive or Inefficient Work

Werner argues that the lodestar also should be reduced due to certain unnecessary and duplicative fees due solely to Plaintiffs' counsel's inefficiency. In determining the lodestar, the Court should exclude hours that were not "reasonably expended." *Hensley*, 461 U.S. at 434. It is appropriate to reduce the lodestar to account for "excessive, redundant, or otherwise unnecessary work." *U & I Sanitation v. City of Columbus*, 112 F. Supp. 2d 902, 904 (D. Neb. 2000). "A court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used." *A.J. by L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995).

Several of Plaintiffs' claimed hours were due to missed deadlines and errors for which Werner should not bear the costs. For example, Plaintiffs reported nearly 40 hours for time spent opposing Werner's Motion to Strike Plaintiffs' Undisclosed Witnesses and communicating with those undisclosed witnesses. In March 2014, less than 30 days before the original April 1, 2014, fact discovery deadline, Plaintiffs filed a witness list identifying 28 potential witnesses not previously disclosed in discovery. Memorandum & Order at 2, ECF No. 273, Page ID 17447. The Court granted Werner's motion to strike the additional 28 witnesses, reasoning that "if Plaintiffs' counsel knew these witnesses had [relevant] information, it was their obligation to disclose the names and information they had to the defendants as soon as they became aware of it." *Id.* at 5, Page ID 17450. Because the fees associated with this motion to strike were the result of Plaintiffs' failure "to comply with the requirements of Rule 26," Werner should not be required to pay for this time.

By way of further example, Plaintiffs identify nearly 50 hours spent unsuccessfully defending against Werner's motions to strike Plaintiffs' late expert disclosures. In August 2015, less than one month before the trial then scheduled for September 2015, Plaintiffs produced new, previously-undisclosed hourly damage totals allegedly prepared by Kroon. *See* Memorandum & Order at 1-3, Filing 396, Page ID 42024-26. In December 2015, Plaintiffs produced a Kroon declaration, in which he purported to explain the new damage totals. *Id.* at 3, Page ID 42026. The Court granted Werner's motion to strike the August 2015 damage totals and the December 2015 Kroon declaration, concluding those expert opinions were disclosed well past the deadline and the late disclosure was neither substantially justified nor harmless. *Id.* at 4-

7, Page ID 42027-30. Because hours spent defending the motions to strike were necessitated solely by Plaintiffs' unjustified efforts to disclose untimely expert opinions, Plaintiffs are not entitled to those fees.

Upon review of the Fee Itemization, the Court concludes that Plaintiffs' request should be reduced by 200 hours for time spent on work that was excessive or necessary only due to missed deadlines or litigation errors. Because Plaintiffs incurred these fees based on their own missed deadlines, Werner cannot reasonably be expected to pay such fees.

### e. Reduction for Excessive, Duplicative or Unnecessary Work

For the reasons stated, the Court has identified at least 800 hours of work in the Fee Itemization that must be excluded from the award because it was excessive, duplicative, or unnecessary. This total represents more than 25 percent of the total hours claimed. Although many specific hours have been identified, it is impractical or impossible to pinpoint each excessive, duplicative, or unnecessary hour worked. Accordingly, the Court will reduce the total award by 25 percent to reflect time that was excessive, duplicative, or unnecessary.

### 2. Fees For Time Spent on Other Claims or Cases

Plaintiffs' award also must be reduced significantly because the Fee Itemization fails to distinguish between work on successful claims and work on unsuccessful claims. "When a plaintiff has prevailed on some claims but not on others, the plaintiff may be compensated for time spent on unsuccessful claims that were related to his successful claims, but not for time spent on unsuccessful claims that were 'distinct in all respects from his successful claims.'" *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001)

(quoting *Hensley*, 461 U.S. at 440).  "No fee can be awarded on unsuccessful claims that were not related to the successful claim."  *Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 748 (8th Cir. 2004) (citing *Hensley*, 461 U.S. at 434-35). "Claims are related and hence deserving of compensation, if they 'involve a common core of facts' or are 'based on related legal theories.'" *Emery*, 272 F.3d at 435 (quoting *Hensley*, 461 U.S. at 435).

> Where successful and unsuccessful claims involve a common core of facts and related theories, it will generally be impracticable to separate the hours spent on the claims, and rather than trying to do so, the court should focus on the overall relief the plaintiff obtained in relation to the time reasonably spent on the litigation.

*Kennedy Bldg.*, 375 F.3d at 748 (citing *Hensley*, 461 U.S. at 435).  Where "attorneys' time entries are insufficiently specific to differentiate between claims, the consequences of such a shortcoming rests with the prevailing party."  *Lash v. Hollis*, 525 F.3d 636, 643 (8th Cir. 2008) (citing *Hensley*, 461 U.S. at 437 n.12).

Plaintiffs succeeded on their short rest break claims, but were unsuccessful on their sleeper berth claims. Although both claims were brought under the FLSA against the same employer, they were based on different facts, different regulations, and different legal theories. *See, e.g.,* Plaintiffs' Br. in Support of Motion for Partial Summary Judgment, ECF No. 322 (summarizing each claim and distinguishing facts and law relied upon for short rest break claim from facts and law relied upon for sleeper berth claim).  The Court has held that "the requirements for the compensability of short rest breaks and truckers' sleeper berth time are separate and distinct." Order in Limine at 5, ECF No. 472, Page ID 42776.  Specifically, the Court granted Werner's motion in limine to exclude any evidence or arguments regarding Werner's denial of liability for the short rest break claims, noting liability for those claims was not at issue and that the short rest

breaks claim was "separate and distinct" from Plaintiffs' sleeper berth claim. *See* Plaintiffs' Br. at 4, ECF No. 552, Page ID 56056. Because the claims were separate and distinct, it would not have been impracticable for counsel to separate the hours spent on each claim.

The Fee Itemization contains several entries for work that expressly reference the sleeper berth claims. *See* ECF No. 556-1 at 22, 28-29. Other entries identify work that did not relate in any way to the short rest break claims. For example, Plaintiffs' seek nearly 100 hours in preparing a motion to exclude Werner's expert, Robert Topel. *See* ECF No. 556-1 at 27. In addition to these specific entries, Plaintiffs' billing descriptions do not meaningfully distinguish between time spent on the short rest break claims and time spent on the sleeper berth claims. Plaintiffs argue that "the majority of the work in this case was either equally applicable to both theories and/or applicable to the short rest break theory alone." Plaintiffs' Brief at 2 n.1, 3-5, ECF No. 555. Notwithstanding this assertion, Plaintiffs claim they "exercised billing discretion and reduced their entire lodestar by 1/3 to account" for work "related exclusively to the sleeper berth claim." *Id.* at 2 n.1.

The Court cannot discern from the Fee Itemization whether Plaintiffs' lawyers indeed spent two-thirds of the requested time on the short rest break claims. Despite Plaintiffs' assertion otherwise, the bulk of the litigation effort in this case, by the parties and the Court, has been in relation to Plaintiffs' sleeper berth claims. The Court granted summary judgment to Plaintiffs on their short rest break claims on August 3, 2015. Summary Judgment Order, ECF No. 347. The Court was never asked to revisit this ruling. After that time, the only issue remaining relative to the short rest breaks claim

was the amount of damages.  In contrast, Plaintiffs' unsuccessful sleeper berth claim was subject to significant discovery and pre-trial motion practice.  The sleeper berth claim was the principal subject at trial and has been a key subject in post-trial motions, including this one.

Because of the vagueness of the entries in the Fee Itemization, Plaintiffs have not demonstrated that two-thirds of their counsel's time was spent on the short rest break claims.  As noted above, where time entries are insufficiently specific to differentiate between claims, the consequences of such a shortcoming rests with the prevailing party." *Lash v. Hollis*, 525 F.3d 636, 643 (8th Cir. 2008) (citing *Hensley*, 461 U.S. at 437 n.12).  Plaintiffs' Fee Itemization fails to distinguish between time spent on their two principal claims. Based upon a detailed review of the Fee Itemization, the record, and the Court's own knowledge of this case, the Court will reduce the remaining hours by half.

### *3.  Paralegal Time*

Certain entries for paralegal time are not compensable.   "[I]n calculating attorneys' fees, 'purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.'" *Murray v. Collections Acquisitions, LLC*, No. 8:11CV301, 2012 U.S. Dist. LEXIS 92044 at *7 (D. Neb. July 3, 2012) (quoting *Missouri v. Jenkins by Agyei*, 491 U .S. 274, 288 (1989)). For example, this Court has recognized that "filing through CM/ECF, preparing and reviewing documents, and calendaring dates . . . are clerical tasks." *Id.*; *see also Doe v. Neb. State Patrol*, No. 8:09CV456, 2012 U.S. Dist. LEXIS 181029, at *28-29 (D. Neb. Dec. 21, 2012) ("[T]he customary practice in the Omaha, Nebraska, market is that secretarial tasks, including but not limited to

mailing of summons, updating files, filing documents in files, faxing documents . . .

would generally not be billed to a client but would usually be considered part of a firm's

overhead."), *cf. Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) ("Plaintiffs are not

entitled to reimbursement for expenses that are part of normal office overhead in the

community.").

In this case, Plaintiffs' Fee Itemization includes approximately 456.9 hours spent

by paralegals in scanning consent forms and adding those consent forms to a database.

(Ex. 1, McGill Decl. ¶20 & Ex. 1A, Fee Itemization, ¶XI). Scanning documents and

adding those documents to an online database are clerical tasks that do not require

paralegal training or expertise. *See, e.g., Murray*, 2012 U.S. Dist. LEXIS 92044, at *7.

Plaintiffs are not entitled to compensation for this time, and the total fee will be reduced

by 456.9 hours times the undisputed paralegal rate of $110.

### C. Enhancement

Plaintiffs seek a 2x multiplier on the total attorney fee as an enhancement

because of the complexity and size of the case, and the excellent results obtained. "An

upward adjustment to an attorney's lodestar hourly rate is permissible 'in certain

"rare" and "exceptional cases," supported by both "specific evidence" on the record and

detailed findings by the lower courts.'" *New Hope Fellowship, Inc. v. City of Omaha*, No.

8:04CV259, 2006 U.S. Dist. LEXIS 95090, at *18-19 (D. Neb. May 17, 2006) (quoting

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565

(1986)). "Because the lodestar amount may already compensate the applicant for

exceptionally good service and results, however, the fee applicant must do more than

establish outstanding service and results." *In re Apex Oil Co.*, 960 F.2d 728, 732 (8th

Cir. 1992). "The applicant also must establish that the quality of service rendered and the results obtained were superior to what one reasonably should expect in light of the hourly rates charged and the number of hours expended." *Id.*

Plaintiffs have not demonstrated that the quality of services rendered were superior to the rates charged and the hours expended in this case. While Plaintiffs obtained summary judgment on their short rest break claims and received the full amount requested in damages, Plaintiffs' counsel have not shown that these results were superior to what Plaintiffs should have expected. Accordingly, the Court will not grant an enhancement.

### D. Summary of Fee Award

In accordance with the Court's reasoning above, the Court will adjust the lodestar as follows:

| Attorney | Hours | Rate | Fee |
|---|---|---|---|
| Swidler | 2,043.90 | $275 | $562,072.50 |
| Swartz | 351.5 | $325 | $114,237.50 |
| Boyette | 296 | $200 | $59,200.00 |
| Horowitz | 267.6 | $200 | $53,520.00 |
| Sweeney | 93.1 | $275 | $25,602.50 |
| **Total Lodestar** | **3,052.10** | | **$814,632.50** |
| *25% Reduction for Erroneous, Vague, Excessive, or Unnecessary Work* | | | $610,974.38 |
| Paralegal time | 578.3 | $110.00 | $63,613.00 |
| Total Attorney and Paralegal Fee | | | $674,587.38 |
| *50% Reduction for Work on Sleeper Berth Claims* | | | ($337,293.69) |
| **Total Fee Award** | | | **$337,293.69** |

## II. Nontaxable Costs

Under the FLSA, prevailing plaintiffs may recover costs, including reasonable out-of-pocket expenses beyond those normally allowed under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002); *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988) (allowing recovery of attorney travel expenses); *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (attorney's fees include expenses that are "incidental and necessary" to the representation, provided they are "reasonable."). Plaintiffs seek reimbursement of $199,512.31 in out-of-pocket litigation costs and up to $92,260.00 to be paid to KCC Class Action Settlements (KCC) to distribute the judgment. Based on the results and the nature and size of this class action, Plaintiffs are entitled to a sizeable reimbursement of costs. The Court will award reasonable costs, but will reduce the award for costs not reasonably incurred.

### A. Notice to Class Members in Case No. 12-cv-307

Werner will not be ordered to pay the full amount of distributing the class notice for Case No. 12-cv-307. Plaintiffs seek $94,023.26 for the cost of sending two separate notices to class members - one in Case No. 11-cv-401 and one in Case No. 12-cv-307. *See* ECF No. 446-1, Page ID 56199. Plaintiffs previously requested that the Court order Werner to reimburse the cost of sending a notice to class members in Case No. 12-cv-307. In October of 2012, Werner requested an extension of time to respond to Plaintiffs' motion for certification. Plaintiffs opposed the extension, arguing that they would be severely prejudiced, in part, because the extension would prevent Plaintiffs from sending a hybrid notice for both cases to all class members. Plaintiffs stated that

they would not oppose the extension if the Court cured the prejudice and ordered Werner to pay for the costs of the second set of notices. ECF No. 101, Page ID 1560. The Court did not expressly address Plaintiffs' request for costs, but concluded that Plaintiffs were not prejudiced by the extension because it was their choice to file a second lawsuit and, unless the cases had been consolidated, Plaintiffs would have had to send a second notice anyway. Order at 2, ECF No. 103, Page ID 1566. Plaintiffs filed Case No. 12-cv-307 so that they could pursue claims under Nebraska law because Plaintiffs "realized they had pursued the law of the wrong state." *Id.*

In light of its previous order, Werner will not be ordered to pay the costs of the notice to class members in Case No. 12-cv-307. Plaintiffs' evidence does not distinguish between the costs for the two sets of notices. Therefore, the Court will reduce the requested amount by half, to $47,011.63.

### B. Costs for Second Deposition of Richard Kroon

Plaintiffs seek costs in the amount of $1,935.44 for the second deposition of Richard Kroon. As discussed above, the Court has already held "the second deposition of Plaintiffs' expert will be at plaintiffs' expense." Memorandum & Order at 2, ECF No. 283, Page ID 17513; *see also* Memorandum & Order at 6, ECF No. 275, Page ID 17460.

### C. Costs for Remaining in Omaha to Appear for Verdict

Plaintiffs seek $2,974.61 in costs incurred to appear for the verdict after trial. After the jury instructions were delivered, the Court specifically instructed the parties that they were not required to be present when the verdict came in. Tr., ECF No. 549, Page ID 56038. Plaintiffs argue that they could not have known if the jury would have

had a question prior to reaching their verdict, nor could Plaintiffs' counsel have known if issues with exhibits or questions would have mandated that they appear in Omaha. None of these concerns, had they arisen, required Plaintiffs' counsel to be physically present in Omaha. For these reasons, the request for nontaxable costs will be further reduced by $2,974.61.

### D.  Taxable Costs

Plaintiffs seek $14,314.00 in costs for filing fees, service fees, deposition transcripts, and trial transcripts.  This Court required that a "party entitled to recover costs must file within 30 days after entry of judgment a verified bill of costs" on a Court-provided form. NECivR 54.1(b).  Post-trial motions do not extend the time for filing a verified bill of costs under this rule. NECivR 54.1(b). A party who fails to file a bill of costs within the time allowed waives taxable costs.  NECivR 54.1(d); *Marshall v. Anderson Excavating & Wrecking Co.*, No. 8:14-CV-96, 2017 U.S. Dist. LEXIS 39563, at *9 (D. Neb. Mar. 20, 2017); *see also Kinzenbaw v. CNH Am., LLC*, No. C01-0133, 2006 U.S. Dist. LEXIS 78253, at *4 (N.D. Iowa Apr. 5, 2006) ("Per this district's Local Rules, Hill's untimely request constitutes a waiver of its right to have costs taxed.").

Plaintiffs failed to file a Bill of Costs regarding those taxable costs within the time provided by the local rules. Plaintiffs request $700.00 in filing fees, $135.00 for service fees, $9,578.89 for the cost of deposition transcripts, and $3,900.55 for trial transcript costs.  By statute, these expenses are taxable costs, *see* 28 U.S.C. § 1920, and should have been submitted in an appropriate bill of costs.  The Court will not award these costs as part of the fee award.

### E.  Costs of Distributing Verdict Amount

Werner requests that the Court reduce the amount of nontaxable costs by $27,025.00 for costs associated with distributing the verdict amount. However, these costs have not yet occurred. The Court has already addressed the appropriateness of the distribution plan and approved KCC as the administrator. There no is no reason to believe that the award will be distributed inconsistent with the Court's previous Order. *See* ECF No. 545. The Court will not further reduce the award for costs not yet occurred.

### F. Costs Awarded

For the reasons stated above, Plaintiffs will be awarded nontaxable costs. Their requested award will be reduced by the amounts identified above. Accordingly, Plaintiffs are awarded $133,276.63 in nontaxable costs and expenses.

## CONCLUSION

For the reasons stated above,

IT IS ORDERED:

1.    Plaintiffs' Motion for Partial Judgment as a Matter of Law, Motion for New Trial, and Motion to Amend the Judgment, ECF No. 551 in Case No. 8:11CV401; ECF No. 451 in Case No. 8:12CV307, is denied;

2.    Plaintiffs' Motion for Attorney's Fees and Costs under 29 U.S.C. § 216(b) and Motion for Service Payments for Named Plaintiffs, ECF No. 554 in Case No. 8:11CV401; ECF No. 454 in Case No. 8:12CV307, is granted as follows:

     a.    Plaintiffs are awarded $337,293.69 in attorney's fees;

b.   Plaintiffs are awarded $133,276.63 in nontaxable costs and expenses; and

c.   Named Plaintiffs are awarded service payments of $10,000 each, totaling $40,000, to be paid from unclaimed funds of the verdict, or, if the amount of unclaimed funds cannot cover the service payments, to be paid from Plaintiffs' counsel's fee award.

Dated this 9th day of February, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge